LIDA M. HOGSETT, APPELLEE, V. CINEK COAL & FEED COMPANY ET AL., APPELLANTS.

FILED JUNE 15, 1934. No. 29142.

*Gaines, McGilton, McLaughlin & Gaines,* for appellants.

*Mulvihill & Gilson* and *Sheridan & Sheridan, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

GOOD, J.

This is an action to recover compensation under the workmen's compensation law for the death of plaintiff's husband in an accident arising out of and in the course

of his employment. Plaintiff had judgment, and defendant has appealed.

The only question for determination is the amount of the compensation to which plaintiff is entitled, and that depends upon whether the employment in which her husband was engaged at the time of the accident causing his death was seasonal, within the meaning of the workmen's compensation law. If it was seasonal, then the weekly wage of the employee would be one-fiftieth of the total wages earned by him during the year immediately preceding the accident. Comp. St. 1929, sec. 48-126. If the employment was not seasonal, then the weekly wage would be determined by the amount of the average weekly wage which he was receiving at the time of the accident.

Defendant was engaged in the retail coal and feed business in the city of Omaha. The employee began his work for defendant in October, 1932, and continued in that employment until the accident in February, 1933. In the delivery of coal and feed, the defendant owned three trucks and kept two truck drivers regularly employed during the year, but in the season for the heavy deliveries of coal defendant employed a third truck driver, to operate its third truck, and also employed other truckers who owned their trucks. Defendant received large quantities of coal, commencing in July of each year, much of which was stored in bins, and began heavy deliveries of coal to its customers about the first of August, and heavy deliveries continued from that time until late in the following winter. Beginning with the early spring months there were very light deliveries of coal from that time until August following. During the period from August until the following February or March, according to the severity of the weather, defendant employed three truckers and hired additional truckers who owned their trucks. From the late winter or early spring until the following August defendant employed only two truckers.

It appears that when plaintiff's husband was first employed he was unloading coal from cars into bins; that

he continued this work for a considerable time and then, for some reason, was given the position of truck driver, driving the extra truck. Under this state of facts, we must determine whether the employment was seasonal, within the meaning of the workmen's compensation law.

Many words and phrases used in the workmen's compensation law are therein given a statutory definition. "Seasonal" and "seasonal employment" are not so defined. They must be deemed to have been used in the sense that they are commonly and popularly understood. The word "seasonal" pertains, of course, to the four seasons of the year—spring, summer, autumn and winter—but is popularly used in a somewhat wider sense. We speak of the planting season, the harvesting season, hop-picking season, peach and apple-picking season, the berry-picking season, and many other like expressions. All of these have reference to a particular and somewhat definite period of the year. Natural ice harvesting can only be carried on in the colder months. Berry-picking must be carried on when the berries are ripe and ready for market; so with peaches, apples and other fruit crops. The planting season is usually in the spring months; the harvesting season in the summer months; and we think it is in this sense that the term was used. Shoveling and delivery of coal are not confined to any season of the year but are carried on throughout the year. There may be a larger use of coal in the winter, particularly for domestic use, but nevertheless the business is carried on even for domestic use throughout the year, at least in this latitude, and for industrial purposes coal is used practically as extensively in the summer as in the winter season. The handling and delivery of coal cannot, therefore, be regarded as a seasonal employment. To be more specific, the work of plaintiff's husband, at the time of the accident, was driving a truck and delivering coal. His work previous to employment by defendant had been that of a trucker. The trucking business may be more active at certain seasons of the year than at others, but it is one

that is carried on throughout the year. We think the term "seasonal employment," as used in the compensation law, has reference to an employment which must have been completed during some rather definite period of the year.

In *Froehly v. Harton,* 291 Pa. St. 157, it was held:

"A woman engaged as a dishwasher in an amusement park open only three months in the year is not engaged in a seasonal occupation within the meaning of the workmen's compensation act.

"A seasonal occupation is an employment pertaining to a season or a specific part of a year; hence it may be said that a seasonal occupation is an employment pertaining to or of that kind of labor exclusively performed at specific seasons or periods of the year. The word is different in meaning from the words 'casual' and 'intermittent.'

"Seasonal occupations are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it. On the other hand, labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is not seasonal."

In the case of *Damm v. Schreier Contracting Co.,* 257 N. Y. Supp. 705, 235 App. Div. 478, it was held that highway construction labor, which was only carried on in that state during a portion of the year, probably from spring until late autumn, was seasonal. But in another case the same court held that a county, carrying on highway construction work, and utilizing the winter months to manufacture road materials and repair machinery and equipment, was not engaged in a seasonal trade, business or occupation, since the work was carried on throughout the year. *Hogan v. Onondaga County,* 225 N. Y. Supp. 57, 221 App. Div. 636.

In *Blatchley v. Dairymen's League Co-operative Ass'n,* 232 N. Y. Supp. 437, 225 App. Div. 167, it was held that one engaged in ice-harvesting, the season for which was only about 90 days, was engaged in a seasonal occupation.

In *Lincoln Gas & Electric Light Co. v. Watkins*, 113 Neb. 619, it was held: "As applied to occupations, the word 'seasonal,' as used in section 3049, Comp. St. 1922, refers to occupations which are governed by and are ordinarily performed only in certain seasons of the year." In that case a young man worked for his employer only during his vacation, while attending the university, but the work he was performing could be carried on at any time of the year, and his particular time was limited to his opportunity to engage in the work. That, however, did not make it seasonal.

We frequently speak of the holiday season. Many retail merchants employ extra clerks to wait upon the increased patronage which they enjoy during the holiday season, but the work performed is that which is carried on throughout the year and is not seasonal. As was pointed out in *Froehly v. Harton, supra,* while the particular work of dishwashing could only be carried on at the amusement park during the three summer months in which it was open to the public, nevertheless, dishwashing was carried on through the country every day in the year, and the occupation, for that reason, was held not to be seasonal.

Since the employment of plaintiff's husband was not seasonal, her rate of compensation must be determined by the wages received by him in his employment by defendant. His wages during that term averaged $12.50 a week. Under the statute, she is entitled to compensation at the rate of $8.33 a week for the period fixed by statute,—350 weeks.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment in that court in accordance with this opinion.

REVERSED.