JESSICA MAACK ET AL., APPELLANTS, V. SCHOOL DISTRICT OF LINCOLN, IN THE COUNTY OF LANCASTER, IN THE STATE OF NEBRASKA, ALSO KNOWN AS SCHOOL DISTRICT NO. 1, LANCASTER COUNTY, NEBRASKA, ET AL., APPELLEES.
491 N.W.2d 341

Filed November 6, 1992. No. S-89-1396.

John H. Albin for appellants.

James B. Gessford and Gregory H. Perry, of Perry, Guthery, Haase & Gessford, P.C., for appellees.

William F. Austin, Lincoln City Attorney, and Joel D. Pedersen for amicus curiae City of Lincoln.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.
Jessica Maack and Melissa Maack, students enrolled at

Lincoln East Junior-Senior High School, were not immunized against rubeola (measles). During an outbreak of measles in Lincoln during May 1989, Jessica and Melissa Maack were excluded from attending classes at Lincoln East for the period from May 10, 1989, until May 20, 1989. Lincoln East is under the jurisdiction of the board of education of School District No. 1 of Lancaster County, Nebraska (Lincoln Public Schools). After a series of administrative appeals within the school system, in which the exclusion was affirmed, Jessica and Melissa Maack, with their parents, Linda Maack and Timothy J. Maack, on June 29, 1989, appealed to the district court for Lancaster County, which affirmed the board of education's exclusionary order.

## MOOTNESS

In the absence of any indication to the contrary, we assume that Jessica and Melissa Maack returned to complete their 1988-89 academic year at Lincoln East. As will appear later in this opinion, the Maack children suffered no adverse consequences to their scholastic status as the result of their exclusion from Lincoln East. Ordinarily, if the Maack children returned to school after conclusion of the exclusionary period, the question regarding propriety of their exclusion would be rendered moot inasmuch as the exclusion was terminated, and with such termination any case or controversy concerning correctness in the exclusion personally affecting the Maacks would have resolved itself. Generally, a case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of the litigation. See *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986). However, mootness does not prevent appellate jurisdiction and consideration of a question or issue which relates to general public interest and will likely recur, but which may elude judicial review as the result of the transitory setting in which the issue or question has arisen. See, *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991); *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982); *Meyer v. Colin*, 204 Neb. 96, 281 N.W.2d 737 (1979).

Our review of this court's decisions indicates that the issues raised by Maacks in reference to a school board's authority to exclude students in a situation involving a dangerous and communicable disease present questions of first impression in Nebraska and are matters of general public interest. Therefore, we proceed to consider the questions raised in Maacks' appeal.

## STANDARD OF REVIEW

Pursuant to the student suspension or expulsion act, Neb. Rev. Stat. §§ 79-4,170 to 79-4,205 (Reissue 1987), a party aggrieved by a school board's decision may institute proceedings for review by the district court in the county where the action is taken. See § 79-4,202. A party aggrieved by a district court's final judgment under the student suspension or expulsion act may appeal as provided in the Administrative Procedure Act. See § 79-4,205.

Because Maacks' petition for review in the district court was filed before July 1, 1989, Maacks' appeal is "taken in the manner provided by law for appeals to the Supreme Court in civil cases and shall be heard de novo on the record." Neb. Rev. Stat. § 84-918(2) (Cum. Supp. 1990). Consequently, "[i]n an appeal from a judgment pursuant to the Administrative Procedure Act, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the trial court's findings." *Heithoff v. Nebraska State Bd. of Ed.*, 230 Neb. 209, 210, 430 N.W.2d 681, 682 (1988). See, also, *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985) (Supreme Court's de novo review under Administrative Procedure Act before amendment in 1989).

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord, *Stewart Trucking v. PBX, Inc.*, 238 Neb. 958, 473 N.W.2d 123 (1991); *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991).

## BACKGROUND FOR MAACKS' APPEALS

*Parental Waiver.*

Jessica and Melissa Maack enrolled and attended classes at

Lincoln East under a parental waiver of student immunization against certain diseases, including measles. Such waiver is authorized by Neb. Rev. Stat. § 79-444.01 (Reissue 1987), which provides:

Each board of education and the governing authority of each school in this state shall require each student to be protected against measles, mumps, rubella, poliomyelitis, diphtheria, pertussis, and tetanus by immunization . . . unless a parent or guardian of such student presents a written statement that he or she does not wish to have such student so immunized.

While the Maack children were enrolled at Lincoln East, § 79-4,177(1) provided in pertinent part:

(1) Any student may be excluded from school in the following circumstances[:]

(a) If the student has a dangerous communicable disease transmissible through normal school contacts and poses an imminent threat to the health and safety of the school community; or

(b) If the student's conduct presents a clear threat to the physical safety of himself, herself, or others, or is so extremely disruptive as to make temporary removal necessary to preserve the rights of other students to pursue an education.

*Outbreak of Measles.*

Since 1981, there had been no reported cases of measles in Lincoln. However, in the spring of 1989, a measles "outbreak" occurred in the Lincoln area. Between April 20 and May 12, 1989, there were 24 confirmed cases of measles in the area. On May 5, a student at Lincoln East was found with a clinically confirmed case of measles. Jane Ford, director of the Lincoln-Lancaster County Department of Health, consulted with Dr. Richard A. Morin, a physician who is a board-certified internist with a subspecialty in the field of infectious diseases. After her conference with Dr. Morin, Ford contacted the administration of Lincoln Public Schools on May 6 and "directed that all unimmunized children be excluded from Lincoln East Junior-Senior High effective 8:30 a.m. Monday

May 8, 1989 for a period of not less than 2 weeks or until they are properly immunized or their immune status confirmed." At Lincoln East there were 79 students, including Jessica and Melissa Maack, who had not been immunized against measles. Also, among the Lincoln East students were some whose physical condition was the basis for special education.

Parents of the 79 unimmunized students were informed that a clinically confirmed case of measles had been found at Lincoln East and that unimmunized children could not attend school "until there are no new cases of measles or until proof of immunization is provided." After Timothy Maack received the message about measles at Lincoln East, he called the school nurse, Janet Zenner, and requested more information. Zenner told Timothy Maack about the clinically confirmed case of measles and that health officials were concerned about the safety of children at Lincoln East, including the Maack children. Timothy Maack told Zenner that his daughters were not, and would not be, immunized against measles. Linda and Timothy Maacks' rejection of immunization for their children was based on personal preference and was not based on religious or medical reasons. Although the Maack children attended school on May 9 and part of May 10, in the afternoon of May 10, Lincoln East Principal Richard Krause conferred by telephone with Timothy Maack. Krause told Timothy Maack that because Maacks' daughters were not immunized against measles, the children presented a clear threat to the physical safety of themselves and other students at Lincoln East. Krause also informed the Maacks that Jessica's and Melissa's absence from school would be excused, their grades or number of credits would not be affected, and, if Maacks desired, tutors would be provided to assist the Maack children in keeping up with their schoolwork during the exclusionary period, which would terminate on May 20 unless new cases of measles were discovered in the interim. If Maacks' daughters were immunized during the exclusionary period, the children could return to school. After the telephonic conference, Krause on May 10 excluded the Maack children from attendance at Lincoln East.

*Maacks' Administrative Appeals.*

On May 12, Linda and Timothy Maack requested a hearing concerning the exclusion of their daughters, and on May 18, before a hearing officer designated by the superintendent of Lincoln Public Schools, Maacks, with their daughters and an attorney, attended the hearing, which was conducted in accordance with procedures for long-term suspension or expulsion of students. See §§ 79-4,182 to 79-4,195. On May 19, the hearing officer issued a report containing findings of fact and a recommendation that the emergency exclusion of Jessica and Melissa Maack be upheld and continued, because presence of the Maack children posed "a clear threat to the physical safety" of themselves and other students. The superintendent of Lincoln Public Schools, as required by § 79-4,195(2), reviewed the May 18 hearing and notified Maacks that he accepted the hearing officer's findings and recommendation.

Next, pursuant to §§ 79-4,198 to 79-4,200, exclusion of the Maack children was reviewed by a committee of the board of education of Lincoln Public Schools, and after a hearing on May 30, at which Maacks appeared and were represented by counsel, the committee on May 30 issued a decision, upholding exclusion of the Maack children.

*Measles and Its Consequences.*

A graphic and detailed description of measles and its consequences was given by Dr. Morin at the administrative hearing on May 18, 1989. According to Dr. Morin, an internist who specializes in diagnosing, treating, and preventing infectious diseases, "measles" is synonymous with "rubeola," an acute epidemic and "highly contagious" disease that is contrasted with "rubella," a usually mild disease commonly called German measles. Features of rubeola, or measles, include fever, rash, coryza ("runny nose"), "congestion of nasal mucosa," and conjunctivitis ("pink eye"). Since the measles virus locates in a person's "air way," exposure to measles results from an infected person's coughing or sneezing in the air, spreading the "virus contained in the mucous that has been sprayed in the air." The sprayed virus is "viable for several hours." Measles is especially dangerous, because an infected

person may be "relatively asymptomatic," but can communicate the disease several days before and after the manifested symptoms of measles. Measles is especially dangerous in a community where there has been a long period without reported cases of measles, such as the time during which the Lincoln area had no reported cases of measles, and is "particularly dangerous in those situations in which there are multi-handicapped individuals such as those who attend [Lincoln] East Junior-Senior High School."

Results from laboratory tests to verify presence of measles take as long as 2 weeks and may not necessarily be conclusive; hence, laboratory tests provide no "prompt information" and are impractical as a means to determine whether a student should be excluded from school on account of measles. For a person who is unimmunized against measles, the disease has a "practically 100 percent infection rate." Proper vaccination is generally "95 percent effective" against measles, while vaccination between the ages of 12 months and 15 months has an "85 percent protection rate." Therefore, persons with the highest risk of catching measles are the unimmunized, while those vaccinated have lower risks of acquiring the disease.

Complications from measles include otitis (ear infection), pneumonia, and encephalitis (inflammation of the brain that may result in convulsions, deafness, or mental retardation). Once an individual is infected with measles, there is nothing medically, including treatment with drugs, that prevents further medical problems, which may include death in approximately 1 out of every 3,000 cases of measles.

Dr. Morin concluded that in view of the "community-wide outbreak" of measles and the clinically confirmed case of measles at Lincoln East Junior-Senior High School, without immunization against measles Jessica and Melissa Maack were "a clear threat to the physical safety of themselves and others" at the junior-senior high school. Also, in Dr. Morin's opinion, as previously related to Ford, director of the Lincoln-Lancaster County Department of Health, the clinically confirmed case of measles at Lincoln East required that all unimmunized children be excluded from Lincoln East for a period of 2 weeks or until they were properly immunized or their immune status was

confirmed.

## REVIEW BY DISTRICT COURT

Maacks then instituted proceedings in the district court for Lancaster County for review of the exclusionary decision by the school district. The district court concluded that the board of education did not violate Maacks' constitutional rights, such as the right to equal protection under the 14th Amendment to the U.S. Constitution, and that the decision by the board of education was authorized by law.

## ASSIGNMENTS OF ERROR

Maacks contend that (1) the school board lacks authority under § 79-4,177(1)(b) to exclude Jessica and Melissa Maack from school; (2) § 79-444.01 authorizes children to attend school, even during a measles outbreak, if their parents have signed a waiver of immunization against the disease; (3) the Maack children's equal protection rights have been violated; and (4) Maacks have not been afforded procedural due process concerning exclusion from school.

## STATUTORY AUTHORITY TO EXCLUDE STUDENTS

First, Maacks contend that § 79-4,177(1)(b) does not authorize a student's exclusion from school when the student is not infected with a dangerous communicable disease. Therefore, Maacks argue, since Jessica and Melissa Maack were not shown to have measles, the Maack children could not be excluded from school under § 79-4,177(1). However, a student's "conduct [that] presents a clear threat to the physical safety" of the student or other students may be found in a situation involving a student who is unimmunized against a dangerous and communicable disease and who, nevertheless, attends a school where presence of the disease is confirmed. In that situation, the unimmunized student's presence in school, exposing the student to the contagious disease, poses a clear threat to the student's health, that is, the student's physical safety, especially if there is a strong likelihood that the unimmunized student will contract the dangerous and communicable disease. Therefore, we hold that pursuant to § 79-4,177(1)(b), attendance by a public school student at a

school where presence of a dangerous and communicable disease is confirmed, when the student is unimmunized against the disease, is conduct that presents a clear threat to the physical safety of the unimmunized student and other students and allows the unimmunized student's exclusion from school. In Maacks' case, according to Dr. Morin, there was a "practically 100 percent infection rate" for the unimmunized Maack children, once they were exposed to measles. We need not further reiterate the remainder of Dr. Morin's testimony concerning the dire consequences of measles, conditions, and complications that certainly and clearly constitute a serious threat to one unimmunized against the extremely contagious disease. For that reason, § 79-4,177(1)(b) supplies authority for the Maack children's exclusion from school under the circumstances.

Next, Maacks argue, in substance, that § 79-444.01, the immunization waiver statute, operates in absolute isolation from § 79-4,177(1), the exclusionary statute, so that a child unimmunized against measles may attend school even during an outbreak of measles if there has been the appropriate waiver of immunization. The school district argues that the emergency situation of a measles epidemic authorizes exclusion of an unimmunized student pursuant to § 79-4,177(1)(b) notwithstanding the immunization waiver provision of § 79-444.01. Consequently, Maacks' appeal presents a question of statutory construction, that is, whether § 79-444.01 authorizes children whose parents have signed a waiver of immunization to attend school during a measles outbreak, when their attendance poses a clear threat to themselves, a situation that allows a school board to temporarily exclude students pursuant to § 79-4,177(1)(b). More simply, does § 79-444.01 take precedence over § 79-4,177(1)(b), or vice versa?

In examining the statutes in question, we bear in mind general rules for statutory interpretation. "When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning." *State v. Crowdell*, 234 Neb.

469, 473-74, 451 N.W.2d 695, 699 (1990). Accord *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991). "To ascertain the intent of the Legislature, a court may examine the legislative history of the act in question." *Spence v. Terry*, 215 Neb. 810, 814-15, 340 N.W.2d 884, 887 (1983). Accord *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 444 N.W.2d 312 (1989).

However, neither the language of §§ 79-444.01 and 79-4,177(1)(b) nor the legislative history for those statutes indicates that the Legislature considered the relationship between the two statutes. As Benjamin N. Cardozo noted, a peculiar judicial problem of statutory interpretation occurs " 'when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.' " Benjamin N. Cardozo, The Nature of the Judicial Process 15 (1921) (quoting from John Chipman Gray, Nature and Sources of the Law (1909)).

Sections 79-444.01 and 79-4,177(1)(b) are separated by several statutory sections included under the heading "GENERAL PROVISIONS" pertaining to school districts and boards of education. For that reason, we may characterize §§ 79-444.01 and 79-4,177(1)(b) as statutory parts of an act containing expressions of general authority for school districts and boards of education.

> As a series or collection of statutes pertaining to a certain subject matter, statutory components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible.

*Wounded Shield v. Gunter*, 225 Neb. 327, 333, 405 N.W.2d 9, 13 (1987). Accord *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 412 N.W.2d 459 (1987).

Also, when there is no clear indication of legislative intent, traditional maxims of interpretation may be helpful, but " ' "rules of construction are neither ironclad nor inflexible, and must yield to manifestations of contrary intent." ' "

*Grosvenor v. Grosvenor*, 206 Neb. 395, 399, 293 N.W.2d 96, 99 (1980). According to one such maxim, however, to the extent there is a conflict between two statutes on the same subject, a specific statute prevails over a general statute, or, as expressed in *Kibbon v. School Dist. of Omaha*, 196 Neb. 293, 298-99, 242 N.W.2d 634, 637 (1976):

> It is a well-established rule that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict. Houser v. School Dist. of South Sioux City, 189 Neb. 323, 202 N. W. 2d 621. Where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication. Bass v. County of Saline, 171 Neb. 538, 106 N. W. 2d 860.

Accord *Glockel v. State Farm Mut. Auto. Ins. Co.*, 219 Neb. 222, 361 N.W.2d 559 (1985).

Section 79-444.01 allows a student to be admitted to a public school without immunization against certain diseases if the student's parent or guardian signs and presents a statement that the parent or guardian does not wish the child to be immunized. On its face, § 79-444.01 contains nothing that limits the waiver of immunization provision. Similarly, § 79-4,177(1)(b) authorizes schools, without exception, to temporarily exclude a student whose conduct poses a clear threat to the physical safety of the student or other students. Consequently, § 79-444.01 is a general statute pertaining to an ordinary situation of school admission without immunization, but does not deal with an outbreak of a dangerous and communicable disease that threatens students in a school. Section 79-4,177(1)(b) is more specific and expressly deals with an extraordinary or emergency situation. Unlike the general admission requirements of § 79-444.01 that apply to admission of all students, § 79-4,177(1)(b) governs only the small subset of students unimmunized against a dangerous and communicable disease, when their presence in a public school constitutes a clear threat to the unimmunized students or other students. As the result of

specificity, § 79-4,177(1)(b) takes precedence over § 79-444.01.

In the present case, it is difficult to imagine, if not inconceivable, that the Legislature would intend to withhold, withdraw, or shackle a school district's authority to prevent a dangerous and communicable disease from endangering unimmunized students and spreading through classrooms. Consequently, we hold that pursuant to §§ 79-444.01 and 79-4,177(1) taken together, a school board may exclude an unimmunized student from school during presence of a disease specified by § 79-444.01, despite a waiver of immunization in conformity with § 79-444.01. Thus, an unimmunized student's right to attend school on presentation of a properly signed immunization waiver pursuant to § 79-444.01 is limited by a school board's authority, under § 79-4,177(1), to exclude the unimmunized student from school during presence of a disease specified by § 79-444.01. The board of education of Lincoln Public Schools, that is, the board of education of School District No. 1 of Lancaster County, Nebraska, was authorized by § 79-4,177(1)(b) to exclude Jessica and Melissa Maack under the circumstances.

## MAACKS' EQUAL PROTECTION ARGUMENT

The Maacks argue that their right to equal protection, guaranteed by the 14th Amendment to the U.S. Constitution, was violated when Lincoln Public Schools excluded unimmunized students at Lincoln East, while students in the following categories were not simultaneously excluded: (1) students at Lincoln East who were insufficiently immunized, namely, those vaccinated between the ages of 12 months and 15 months, and (2) the unimmunized students at the University of Nebraska-Lincoln.

"The Equal Protection Clause [of the 14th Amendment to the U.S. Constitution] does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* _____ U.S. _____, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992). Therefore,

> unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental

right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

112 S. Ct. at 2331-32. See, e.g., *New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976) (ordinance regarding food vendors did not violate equal protection when the ordinance rationally furthered a legitimate state interest); *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (a zoning ordinance may violate the Equal Protection Clause of the 14th Amendment if the ordinance is not rationally related to a legitimate state interest); *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989) (different notice requirements for one suing a political subdivision and one suing a private individual did not violate equal protection because the different requirements rationally related to a legitimate governmental purpose).

State action, for the purpose of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, may emanate from a ruling of an administrative agency as well as from legislative or judicial action. See *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972). Consequently, action of a school board may implicate the Equal Protection Clause. *Columbus Board of Education v. Penick*, 443 U.S. 449, 99 S. Ct. 2941, 61 L. Ed. 2d 666 (1979) (school board actions which result in racial segregation violate equal protection, even though racial segregation was not mandated by state statute).

Since the classifications about which Maacks complain do not thwart the exercise of fundamental right nor present categories based on a constitutionally suspect characteristic, the classifications in Maacks' case are examined in reference to a rational basis test. When considered under a rational basis test, the classifications of excluded students do not violate Maacks' equal protection rights. The students at Lincoln East who are insufficiently immunized are not in all relevant respects the same as Jessica and Melissa Maack, because the insufficiently immunized, if exposed, have only a 15-percent chance of contracting measles, while unimmunized students, such as the

Macck children, have a 100-percent chance of catching the disease.

The unimmunized students at the University of Nebraska-Lincoln are not in the same category of students or classification as the Maack children. Students at the University of Nebraska-Lincoln, unlike students at Lincoln East, are not under the control of the board of education of Lincoln Public Schools. Since only the school board is a party to this action, classifications created by other state officials are outside the scope of our review.

## MAACKS' DUE PROCESS CLAIM

Maacks state that "[a] number of procedural problems in complying with Neb. Rev. Stat. §79-4,170 to 79-4,205 are cited in Plaintiffs/Appellants' Petition." Brief for appellant at 17. To be considered by an appellate court, an error must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. See, *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991); *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); Neb. Ct. R. of Prac. 9D(1)d (rev. 1992).

As far as we can glean from the record, Maacks are trying to raise an issue involving due process relative to notice in the exclusionary action, hearing, and reviews of Lincoln Public Schools. However, Maacks do not argue any due process question in their appellate brief. Therefore, for this reason we do not consider any due process issue in the exclusionary action by the board of education of Lincoln Public Schools.

## CONCLUSION

For the foregoing reasons, we find that Jessica and Melissa Maack's conduct in attending school during a measles outbreak without being immunized against measles posed a clear threat to themselves and other students. Consequently, the board of education of Lincoln Public Schools was statutorily authorized to temporarily exclude the Maack children during the measles outbreak, and such exclusion did not violate the equal protection rights of Jessica and Melissa Maack. Therefore, we affirm the judgment of the district court.

AFFIRMED.