REQUESTED BY: Harold Clarke, Director, Nebraska Department of Correctional Services
You have requested an Attorney General's Opinion regarding the accessibility of inmate medical records to the Office of Public Counsel. Specifically, you have asked (1) whether the provisions of Neb. Rev. Stat. § 81-8,245 allow the Office of Public Counsel to review and copy medical records of a prison inmate without his or her consent; (2) whether records of medical treatment provided by the Department of Correctional Services (DCS), either by employees of the state or by providers in the community, constitute "records of an administrative agency" for the purposes of § 81-8,245; (3) whether a procedure requiring the Office of Public Counsel to secure the consent of the inmate/patient prior to release of medical records violates §81-8,245, or subjects those involved to the penalties set out in §81-8,254; and (4) in the case of an inmate death, who may consent to release the medical records to the Office of Public Counsel, assuming consent is required.
As further enumerated below, it is the opinion of our office that the Office of Public Counsel (hereinafter "Ombudsman") may not review and copy an inmate's medical records without his or her consent; that an inmate's medical records are "records of an administrative agency"; that a procedure requiring the Ombudsman to secure the consent of the inmate/patient prior to release of medical records does not violate § 81-8,245, and that the personal representative of an inmate's estate is the person who may consent to release his or her medical records to the Ombudsman.
QUESTION # 1 Do the provisions of Neb. Rev. Stat. § 81-8,245
allow the Ombudsman to review and copy medical records of a prison inmate without his or her consent?
A review of the pertinent statutes, case law, and legislative history demonstrates that the Ombudsman is not authorized to access an inmate's medical records in the absence of the inmate's consent.
Pursuant to Neb. Rev. Stat. § 81-8,245(1), the Ombudsman has the power to investigate any agency action either on complaint or on his or her own motion. The Ombudsman was granted this power when the office was created by the Legislature in 1969. The legislative history of LB521 (1969) makes clear the fact that the Ombudsman's office was to be a place to which an individual could turn when that individual felt he or she had been wronged by a government agency. The function of the office was to act as a go-between, or medium, between the citizen and his or her state government. The introducer's statement of intent, the introduction of the bill before the Judiciary Committee, and the discussion of the bill both before the Committee and during floor debate support this conclusion. For example, when introducing LB521 in 1969, Senator Loran Schmidt said that "the bill would tend to humanize government to some extent and it would give the individual a sense of relationship with his [or her] government that he [or she] has not had in the past . . ."
As such, the Ombudsman was granted authority under Neb. Rev. Stat. § 81-8,245 to "inspect and examine the records and documents of all administrative agencies notwithstanding other provisions of law" In addition to the promulgation of the general statute granting powers to the Ombudsman, the legislature, that same year, passed a specific statute which clearly states, "[t]he content of the [inmate] file shall be confidential and shall not be subject to public inspection except by court order for good cause shown and shall not be accessible to any person committed to the department." Neb. Rev. Stat. § 83-178(2).
Since medical records of the inmate are included in the information contained within the inmate file and are confidential, there appears to be a conflict between Neb. Rev. Stat. §§83-178(2) and 81-8,245. When such a conflict exists, it has long been held that special provisions of a statute in regard to a particular subject will control over general provisions in the same or other statutes. Reinke Mfg. Co., Inc. v. Hayes,256 Neb. 442, 590 N.W.2d 380 (1999); State v. Wood, 245 Neb. 63,511 N.W.2d 90 (1994); Metropolitan Life Insurance v. Kissinger Farms, Inc.,244 Neb. 620, 508 N.W.2d 568 (1993); and Maack v. School Dist. OfLincoln, 241 Neb. 847, 491 N.W.2d 341 (1992). Because § 83-187(2) is more specific in terms of DCS records than § 81-8,245, it controls to the extent a conflict arises as to whether DCS must make medical records available to the Ombudsman. Thus, an inmate's medical records are confidential and are not subject to inspection by the public, which may include the Ombudsman, without a court order for good cause shown.
This office has previously given the opinion that other governmental agencies may not be considered the "public" for purposes of § 83-178(2), and therefore may get access to the inmate's file in the absence of a court order. In an informal opinion issued to former DCS Director Joseph C. Vitek on August 19, 1977, it is stated:
 First of all, the word "public" in the context of this statute should be construed to mean an inspection not dealing with some governmental purpose. For instance, a private citizen's desire to look at an inmate's file or an attorney's desire to look at his inmate client's file. These inspections would not be permitted under this statute. On the other hand, should a government agency with some legitimate governmental interest desire to view these records, we believe it would be permissible under this statute.
* * *
 With the above discussion in mind, we believe it quite clear that the DCS is legally within its right when it releases materials in inmates' files to this office, the Governor's office, other correctional facilities, and other state agencies having a legitimate interest in an inmate file.
See also, Attorney General Opinion, No. 93096, dated November 17, 1993, addressed to Chairperson Ethel Landrum of the Board of Parole.
We agree that the Ombudsman is not required to obtain a court order when it has both a legitimate interest in the inmate's medical records and the inmate's consent to review his or her medical records. However, we believe that the Ombudsman is required to obtain a court order when the inmate does not consent to the release of his or her medical records. "As the purpose of the public counsel is to protect the citizens of this state from abuses by state government, it seems unlikely that the Legislature would have afforded the office of public counsel unbridled discretion in the manner or means of conducting its investigations . . . Broad inquisitorial powers lodged in any governmental entity, regardless of the purposes for which they are granted, must be carefully balanced against the right of the citizen to be free from unwarranted intrusion." Attorney General Opinion, No. 102, dated May 14, 1981, addressed to DCS Acting Director Donald F. Best.
QUESTION # 2 Do records of medical treatment provided by the DCS, either by employees of the state or by providers in the community, constitute "records of an administrative agency" for the purposes of § 81-8,245?
The DCS is an agency of the State of Nebraska. Neb. Rev. Stat. § 81-171. Pursuant to Neb. Rev. Stat. § 83-178, the Director of DCS is required to maintain an individual file for each person committed to DCS which shall include:
a. His or her admission summary;
b. His or her presentence investigation report;
c. His or her classification report and recommendation;
 d. Official records of his or her conviction and commitment as well as any earlier criminal records;
e. Progress reports and admission-orientation reports;
 f. Reports of any disciplinary infractions and of their disposition;
g. His or her parole plan; and
 h. Other pertinent data concerning his or her background, conduct, associations and family relationships.
This office has previously given the opinion that an inmate's medical and psychological records must be maintained in an inmate's individual file. Attorney General Opinion, No. 95090, dated November 21, 1995, addressed to DCS Director Harold W. Clarke. Therefore, it is our opinion that the inmate's medical records are "records of an administrative agency" for the purposes of § 81-8,245.
QUESTION # 3 Does a procedure requiring the Office of Public Counsel to secure the consent of the inmate prior to release of medical records violate § 81-8,245, or subject those involved to the penalties set out in § 81-8,254?
For the reasons set forth in the answer to Question # 1, it is our opinion that a procedure implemented by DCS requiring the Ombudsman to secure the consent of the inmate prior to release of medical records does not violate § 81-8,245. The costs involved to the Ombudsman in securing an inmate's consent to review his or her medical records is minimal compared to the costs which could be incurred litigating an inmate's claim that his or her right to privacy was violated by DCS.
Secondly, Neb. Rev. Stat. § 81-8,254 states that a person who willfully obstructs or hinders the proper exercise of the Public Counsel's functions, or who willfully misleads or attempts to mislead the Public Counsel in his inquiries, shall be guilty of a Class II misdemeanor. Under the plain and ordinary meaning of the statute, DCS must intentionally and willfully obstruct the investigation of the Ombudsman in order to be subjected to the penalties set out in § 81-8,254. By simply requiring the consent of the inmate prior to dissemination of his or her medical records, DCS would not obstruct any investigation of the Ombudsman. Once an inmate consents to the release of his or her medical records, DCS would promptly comply with the Ombudsman's demands to review that inmate's medical records. Again, it should be noted that we are discussing in this opinion a situation where an inmate has indicated that he does not wish the Ombudsman to view his particular medical records, and has not consented to disclosure of his medical records. Therefore, it is our opinion that DCS, in implementing a procedure requiring the Ombudsman to obtain consent from the inmate before medical records are released does not violate § 81-8,245 or subject any person involved to the penalties set our in § 81-8,254.
QUESTION # 4 When an inmate dies, who may consent to release the medical records to the Office of Public Counsel?
It is our opinion that the personal representative of an inmate's estate is the only person who could execute a form granting consent to DCS for release of the deceased inmate's medical records. Neb. Rev. Stat. § 30-2462 et seq.
In conclusion, it is the Attorney General's opinion that the Ombudsman may not review and copy an inmate's medical records without his or her consent; that an inmate's medical records are "records of an administrative agency"; that a procedure requiring the Ombudsman to secure the consent of the inmate/patient prior to release of medical records does not violate § 81-8,245, and that the personal representative of an inmate's estate is the only person who may consent to release his or her medical records to the Ombudsman.
 DON STENBERG Attorney General
 Jennifer M. Amen Assistant Attorney General
Approved By:
__________________________ Attorney General