REQUESTED BY: Senator Tom Baker Nebraska State Legislature
You have requested our opinion as to whether a motor vehicle, semitrailer or trailer hauling grass sod on the highways of this state is allowed, pursuant to Neb. Rev. Stat. § 60-6,301 (Supp. 2002), to exceed by up to 15 percent the maximum weight limits set out in Neb. Rev. Stat. § 60-6,294. As discussed below, we believe that a vehicle hauling grass sod does not qualify for the 15 percent overweight exception of Neb. Rev. Stat. § 60-6,301 because grass sod is not a "seasonally harvested product" under this statute.
In your letter, you have provided some information concerning the grass sod industry. You have informed us that sod growers are considered to be farmers by the Internal Revenue Service. You tell us that grass sod takes about 1½ to 2 years to grow and that when it is mature, it can be cut and removed from the field generally at any time from March to November. You have also informed us that once the sod has been cut, the cut sod needs to be installed within 24 hours of cutting. We understand your question to be whether the weight limit exception of Neb. Rev. Stat. § 60-6,301(5) would apply to the vehicles hauling grass sod.
It is not apparent from the statute whether grass sod is a seasonally harvested product. We are aware of no statutory definition of the phrase "seasonally harvested product." The Nebraska Supreme Court has stated that:
 In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the legislature as ascertained from the entire language of the statute considered in its plain, ordinary and popular sense, it being the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. Curry v. State, ex rel. Stenberg, 242 Neb. 695, 496 N.W.2d 512 (1993). The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible. Maack v. School Dist. of Lincoln, 241 Neb. 847, 491 N.W.2d 341 (1992).
Becker v. Nebraska Acct. Disclosure Comm., 249 Neb. 28, 33,541 N.W.2d 36, 40 (1995).
Based upon this standard, we have reviewed the statutes on this subject in order to understand the intent and purpose of the legislature when it used the phrase "seasonally harvest products." As you know, Nebraska law protects the highways of this State from damage and destruction caused by overweight vehicles by making it illegal to operate vehicles on the public highways that exceed certain maximum weight limits. Neb. Rev. Stat. § 60-6,294 (Supp. 2002). There are, however, various statutory exceptions to the maximum weight limits, including two separate exceptions that involve vehicles carrying "grain or other seasonally harvested products." One of these exceptions is set out in Neb. Rev. Stat. § 60-6,301 (Supp. 2002). Section 60-6,301 states in part as follows:
 When any motor vehicle, semitrailer, or trailer is operated upon the highways of this state carrying a load in excess of the maximum weight permitted by section 60-6,294, the load shall be reduced or shifted to within such maximum tolerance before being permitted to operate on any public highway of this state, except that:
 . . . (5) Any motor vehicle, semitrailer, or trailer carrying grain or other seasonally harvested products may operate from the field where such grain or products are harvested to storage, market, or stockpile in the field or from stockpile to market or factory up to seventy miles with a load that exceeds the maximum load permitted by section 60-6,294 by fifteen percent on any tandem axle, group of axles, and gross weight. The owner or a representative of the owner of the agricultural product shall furnish the driver of the loaded vehicle a signed statement of origin and destination.
This exception became effective in 2000. This exception was based, however, on language from Neb. Rev. Stat. § 60-6,298(1)(b) (1998). Subsection (1)(b) of 60-6,298 was repealed in 2000. The phrase "grain or other seasonally harvested products" used in section 60-6,301(5) was the identical phrase used in the repealed subsection (1)(b) of section60-6,298. We understand that the purpose for moving this statutory exception from section 60-6,298 to 60-6,301 was to eliminate the permit required under 60-6,298.
There is another exception for vehicles carrying "grain or other seasonally harvested products" contained in Neb. Rev. Stat. §60-6,298(1)(a) (Supp. 2002). Section 60-6,298(1)(a)(ii) authorizes the Department of Roads, the Nebraska State Patrol or local authorities to issue permits for certain vehicles when carrying "grain or other seasonally harvested products." It is important to read these two exceptions together since they both apply to the hauling of overweight loads of "grain or other seasonally harvested products on the public highways. Section 60-6,298 provides the following insights into the problem the legislature was addressing when it enacted exceptions to the maximum weight limits for vehicles carrying grain or other seasonally harvested products:
 (1) Although "seasonally harvested" is not defined, the legislature included the following three examples of products that the legislature deemed to be "seasonally harvested" — grains, dry beans, and sugar beets. These examples are all typical farm crops.
 (2) Section 60-6,298(1)(a)(ii)states that a permit should be granted:
 . . . when failure to move such grain or products in abundant quantities would cause an economic loss to the person or persons whose grain or products are being transported or when failure to move such grain or products in as large quantities as possible would not be in the best interests of the national defense or general welfare.
 (3) Section 60-6,298(7)(b) specifies that permits issued pursuant to (1)(a)(ii) shall be "valid for thirty days or sixty days and shall be renewable for a total number of days not to exceed one hundred and twenty days per year." This language shows that the legislature contemplated that overweight loads of "seasonally harvested products" should only be allowed to travel on the public highways for a limited period of time.
 (4) The legislature identified a specific problem with the harvesting of sugar beets. The legislature made specific provision to allow vehicles hauling "sugar beets" to exceed the weight limits by 25 percent. We understand that this special exception for sugar beets was based on the fact that there is an unusually short period of time from when sugar beets mature to when they must be moved out of the field. This special "sugar beet" exception highlights the fact that the legislature was concerned about the specific problem of how to get a mature crop out of the field quickly and efficiently during a relatively short period of time. This suggests that the legislature was considering only a short term use of the highways by overloaded vehicles carrying seasonally harvested products.
 (5) The legislature was mindful that it had a compelling need to protect the public highways from undue damage caused by overweight loads as evidenced by the narrow language it used to grant the exceptions in this statute and in the authority it gave the Department to specify the conditions for the permitted uses of the highways by overweight vehicles. See section 60-6,298(3).
Reading sections 60-6,298 and 60-6,301 together, it appears that the problem the legislature was addressing when it first used the phrase "grain or other seasonally harvested products" related to the problem of getting a crop out of the field quickly and efficiently after the crop becomes mature. Failure to remove the crop quickly from the field when it is ready for harvest could cause the loss of the crop if bad weather or other causes destroy the crop or make it difficult or impossible to remove it from the field. This conclusion is reinforced by the special consideration in this statute for sugar beets. The statute specifically allows vehicles hauling sugar beets to obtain a permit to exceed maximum weight limits by 25 percent. The legislature sought a balance between the need to protect public highways from damage caused by overweight vehicles with the need to quickly remove mature crops from the field at harvest time in order to avoid the risk of the loss of the mature.
In addition to this review of the statutes, we have discussed this matter with officials of the Carrier Enforcement Division of the State Patrol and officials of the Nebraska Department of Roads. We have been informed that the issue you have raised has been considered before and that the longstanding interpretation of this language by the officials charged with enforcing these statutes has been that grass sod does not qualify as "grain or other seasonally harvested products." Further, we have reviewed the legislative history of LB 1361 and have found no substantive discussion of the legislative intent when this phrase was used in the statutes.
It is the opinion of this office that grass sod is not "grain or other seasonally harvested products" based upon the plain and ordinary meaning of the words used and upon the intent and purpose of the legislature as discerned from the statutes discussed above. The key to this conclusion is the legislatures use of the word "seasonally" in this phrase. The Nebraska Supreme Court has stated that: "The word `seasonal' pertains, of course, to the four seasons of the year — spring, summer, autumn and winter — but is popularly used in a somewhat wider sense." Hogsett v. Cinek Coal Feed Co., 127 Neb. 393, 255 N.W. 546
(1934). In Hogsett, the court concluded that: "seasonal employment," as used in the compensation law, has reference to an employment which must have been completed during some rather definite period of the year. Id. The court explained further that:
 A seasonal occupation is an employment pertaining to a season or a specific part of a year; hence it may be said that a seasonal occupation is an employment pertaining to or of that kind of labor exclusively performed at specific seasons or periods of the year. The word is different in meaning from the words "casual" and "intermittent."
 Seasonal occupations are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it. On the other hand, labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is not seasonal.
Id.
Based upon the meaning of the word "seasonal" and the language of sections 60-6,298 and 60-6,301, we are led to the conclusion that a "seasonally" harvested product is a product that is harvested during a certain season of the year. A seasonally harvested product has a certain planting season, growing season and must be harvested during a relatively short period of time in a specific season. A "seasonally" harvested product is not a product that can be gathered or harvested at any time throughout 8 months of the year. There is a compelling need to quickly remove a mature seasonally harvested crop from the field because the failure to get the crop out of the field could mean the loss of the crop. There is not the same risk of loss for a product that can be removed from the field at any time over an eight month period.
There is simply no suggestion in the legislative history or the language used in the exception statutes that the legislature intended to allow overloaded vehicles to use and potentially damage the public highways of the state during eight months of the year. The statutes clearly contemplate a short term, 30 to 60 day "seasonal" use of the highways by overloaded vehicles. This short term risk of damage to the highways is justified only because there is a significant risk of loss to "seasonal" crops if they are not quickly removed from the field when the crop reaches the optimal condition for harvest. Our interpretation conforms to the long standing interpretation of this language by the officials who have enforced these laws and is consistent with the decision of the legislature to not overrule this long standing interpretation when it revisited this issue in 2000. The Nebraska Supreme Court has stated that: "Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the legislature has not taken any action to change such interpretation." Cox Cable v. Nebraska Dept. of Revenue, 254 Neb. 598, 578 N.W.2d 423 (1998). (Headnote number 2). Finally, this exception cannot be interpreted to allow the hauling of a product that can be removed from the field during 8 months of the year because such an interpretation would read the word "seasonally" out of the statute.
Additionally, there is a minor question as to whether grass sod is actually "harvested." The common understanding of the word harvested would tend to be limited to the typical harvesting of farm crops such as corn or wheat. The common understanding of "harvested" would seem to exclude the activity of cutting sod, which seems to actually involve merely transplanting the living grass plants from one place to another. Again, there is no indication from the words used in the statutes that the legislature intended that the term "harvested" would extend to the hauling of plants to be transplanted in another location.
For these reasons, we do not believe that grass sod is a "seasonally harvested product" as that phrase is used in Neb. Rev. Stat. §60-6,301(5) (Supp. 2002).
Sincerely,
 JON BRUNING Attorney General
 Jeffery T. Schroeder Assistant Attorney General
Approved:
________________________________ Attorney General
cc: Patrick O'Donnell Clerk of the Legislature