F & T, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS CORNER BAR, APPELLANT, V. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE.

587 N.W. 2d 700

Filed December 22, 1998. No. A-97-826.

Bradley D. Holtorf, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellant.

Don Stenberg, Attorney General, and Laurie Smith Camp for appellee.

HANNON and MUES, Judges, and NORTON, District Judge, Retired.

MUES, Judge.

## INTRODUCTION

F & T, Inc., doing business as Corner Bar (F & T), filed a petition in error in Lancaster County District Court against the

Nebraska Liquor Control Commission (Commission). F & T sought review of the Commission's decision which conditioned its liquor license on employing a full-time manager and prohibiting Randall Trahan from working on the premises. The district court upheld the condition prohibiting Trahan from working at the bar and struck down the other condition as arbitrary and unreasonable. F & T appeals. For the reasons set forth below, we affirm.

## BACKGROUND

Prior to 1987, Trahan owned 50 percent of F & T. In 1987, he was convicted of felony possession of a controlled substance and gambling. As a liquor establishment is not eligible for a liquor license if a convicted felon owns more than 25 percent of the business, Trahan transferred 75 percent of his stock to his mother and sister. However, Trahan continued to operate the bar on a daily basis. In 1993, F & T redeemed all outstanding stock other than that owned by Trahan, his mother, and his sister. At that point, the only shareholders were Trahan, who owned 25 percent; his mother, who owned 50 percent; and his sister, who owned 25 percent. The bar continued to be run by Trahan.

After a number of disturbance calls to the police in May or June 1996, F & T's liquor license was canceled by the Commission. This cancellation continued throughout the remainder of 1996 and into 1997. We have no records of the cancellation proceeding before us. However, the record does show that in October 1996, Robert Rayl took over the daily operation and management of the bar from Trahan. With permission from the Commission, F & T filed an application for a new liquor license on January 21, 1997. It also filed a formal application for Rayl to be its new corporate manager. At some point after these applications were filed, Trahan and his mother transferred their remaining stock to his sister, Theola Lundholm, who then became the sole shareholder.

On January 22, 1997, the Commission sent the city of Fremont a form seeking its recommendation regarding F & T being granted a liquor license. The record does not show when the city actually received this form, but it did have legal notice of a hearing concerning the license published on February 4.

The form was returned with the city's approval and received by the Commission on February 13.

On March 12, 1997, the Commission received a report from State Trooper Donald Littrell, the background investigator assigned to the Commission's request for an investigation. The report stated: "I strongly feel that should the Liquor Commission approve F & T Inc's current application for a liquor license that they should restrict Randy Trahan from working in the establishment due to his past problems with drugs and alcohol." On March 24, the Commission issued an order to show cause, stating, inter alia, that F & T was "to show cause as to whether or not there has been a change in ownership or if Randy Trahan is still involved, and if so, whether or not the application should be denied." A hearing was set for April 3, and the cancellation of the original license was extended to May 22.

At the hearing, Littrell testified that he prepared an investigative report which raised concerns about the involvement of Trahan in the operation of the bar. Littrell opined that "the past problems at the Corner Bar, I feel, fell back on the — Randy Trahan working in the establishment, running the establishment at that time." He determined that Trahan was still working in the bar and was still a part owner of the building even though all of his stock in the corporation had been transferred to Lundholm in late 1996 or early 1997. He did not see "a whole lot of difference" between the current operation of the bar and how it was operated before the ownership interests had changed. Littrell explained that the local police department had been called to only one or two disturbances at the bar since Rayl took over managing in October 1996.

Trahan did not testify. However, Lundholm testified about the stock transfer. She stated that Trahan gave her his stock and received nothing in return. F & T's attorney explained that when the stock was transferred, the old stock certificates were simply endorsed over to Lundholm. Notwithstanding her 100-percent ownership of F & T and the bar, Lundholm does not work at the bar as she is employed elsewhere full time.

Rayl, the new manager of the bar, testified that he works between 45 and 50 hours at a local restaurant and 20 to 30 hours at the bar. He testified that the bartender is in charge when he is

not at the bar and that he has a full-time day bartender who has been there for 12 years and is familiar with any problems that may arise. It is apparent from the Commission members' questions to Rayl that they were concerned over his ability to perform both jobs for any extended period of time. Rayl is paid $400 per week to manage the bar. His duties include supervising the employees and banking transactions, controlling the inventory, writing checks, and signing contracts.

Trahan is no longer authorized to sign checks for the bar, but works there three nights and two days a week, approximately 35 hours, and is paid a salary of $300 per week. Trahan successfully completed alcohol treatment at Valley Hope in October 1996 and continues to go to AA meetings. His wife also completed the program and no longer works at the bar. Trahan successfully completed probation for the 1987 felony conviction.

The Commission entered an order approving the license subject to two conditions: (1) The applicant gets an approved full-time manager, and (2) Trahan does not work in the licensed premises. F & T filed a petition in error in district court alleging that the evidence presented to the Commission established that the Corner Bar has a qualified full-time manager; that the order directing that Trahan not be allowed to work in the premises is contrary to the evidence and the law, and exceeds the Commission's authority; and that the Commission's decision was arbitrary and unreasonable. It asked the district court to reverse these two conditions to its license issuance.

The district court's hearing on the petition in error was held June 9, 1997. The bill of exceptions from the Commission hearing was admitted into evidence as exhibit 1, and the transcript was admitted as exhibit 2. The Commission's rules were also offered but were refused, the district court reasoning that it was without jurisdiction to receive evidence not offered at the Commission hearing. This ruling is not challenged on appeal.

On June 17, 1997, the district court entered its order. Noting the Commission's concerns that the manager arrangement was a " 'sham' " because Rayl also worked 45 to 50 hours as a manager at a local restaurant, the district court determined that the record did not support the finding that Rayl was not a " 'full time' " manager. It concluded that basing such a determination

upon a set number of hours was arbitrary and unreasonable. Thus, it ordered the condition of employing a "full time" manager deleted from the license requirements.

The district court further reasoned that Trahan was a convicted felon and that he had a past problem with alcohol, but had completed an inpatient treatment program in 1996 with his discharge. While observing that aftercare reports were somewhat "positive," the district court nonetheless determined that the condition prohibiting Trahan from working on the premises was not arbitrary and unreasonable. F & T timely appeals.

## ASSIGNMENTS OF ERROR

F & T alleges (1) that the Commission was without jurisdiction to issue a show cause order and to require a hearing on its application; (2) that the Commission was without jurisdiction and authority to prohibit Trahan from working in the licensed premises; and (3) that prohibiting Trahan from working in the licensed premises as a condition of the issuance of the license was discriminatory, arbitrary, unreasonable, and not supported by the record. The Commission does not challenge the district court's decision to strike the Commission's license condition requiring a full-time manager.

## STANDARD OF REVIEW

If F & T had appealed the decision of the Commission, the rule would be that " 'the district court may not disturb the decision of the [C]ommission unless it was arbitrary and unreasonable.' " See *Grand Island Latin Club v. Nebraska Liq. Cont. Comm.*, 251 Neb. 61, 65, 554 N.W.2d 778, 780 (1996). On appeal, decisions of the Commission are reviewed by an appellate court de novo on the record. *Id.* However, F & T filed a petition in error, and the scope of this court's review thus "varies significantly" from that accorded appeals. See *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 901, 492 N.W.2d 7, 9 (1992).

In reviewing an administrative agency decision on a petition in error, both the district court and the Nebraska Supreme Court review the decision of the administrative agency to determine whether the agency acted within its jurisdiction and whether the decision of the agency is supported by suffi-

cient relevant evidence. *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992). See, also, *Luet, Inc. v. City of Omaha*, 247 Neb. 831, 530 N.W.2d 633 (1995). The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Ashby, supra*. A court reviewing an order of an administrative agency must determine whether there has been due process of law; and this includes an inquiry into the jurisdiction of the agency, whether there was reasonable notice and an opportunity for fair hearing, and whether the finding was supported by evidence. *Id.*

## DISCUSSION
### *Order to Show Cause and Hearing.*

F & T argues that the license should have issued without a hearing because no objections were filed, no protests were timely filed by the Commission, and the Commission was without jurisdiction to issue the order to show cause. We agree that no objections were filed by the city or third persons. However, we conclude that the hearing resulted from a timely filed protest. Accordingly, we need not reach the issue of the authority of the Commission to issue a show cause order in the context of this case in the absence of such protest. See *Motor Club Ins. Assn. v. Fillman*, 5 Neb. App. 931, 568 N.W.2d 259 (1997) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

F & T contends that the objection which precipitated the show cause order and the hearing was untimely in that it was received more than 45 days after the license application was received by the city. F & T relies on Neb. Rev. Stat. § 53-133(1)(c) (Reissue 1984). We note that the State contends that due to subsequent amendments being declared unconstitutional, the issuance of this license is governed by § 53-133 and Neb. Rev. Stat. § 53-132 (Reissue 1984). F & T does not challenge that contention. Section 53-133 provides:

> (1) The Commission shall set for hearing before it any application for a retail license relative to which it has received:
>
> . . . .

(c) Within forty-five days from the date of receipt of such application by the city, village, or county clerk, as the case may be, objections by the commission or any duly appointed employee of the commission, protesting the issuance of said license.

F & T's argument is premised on the fact that the city received the application on January 23, 1997, and on the fact that the order to show cause was issued on March 24, the latter being more than 45 days from the former and thus beyond the time limit of § 53-133(1)(c). F & T misconstrues the evidence and the law.

There is nothing in the record that shows when the city received the application. It shows that it was mailed from the Commission on January 22, 1997; that the city published legal notice of a hearing on the application on February 4; and that the Commission received it back from the city on February 13. Based on the record, the only concrete evidence of the date the city received it is February 4, when it had the legal notice published.

Moreover, F & T's assumption that the date of the show cause order is the date the protest was "received" for purposes of § 53-133 is simply a misreading of the plain language of the statute. Littrell filed his objection with the Commission on March 12, 1997. This date, not the date the show cause was issued, March 24, was the date the Commission received the objection for purposes of § 53-133(1)(c). Based on the evidence presented, an objection was filed by an employee of the Commission, Littrell, and received by the Commission within 45 days from the receipt of the application by the city.

In substance, the show cause order here was merely a means to notify the parties as to when the hearing would be held to address the issues raised by Littrell's objection. F & T's assignment of error that the Commission was without jurisdiction or authority to hold a hearing on the issuance of the license is totally without merit.

*Authority for Issuance of Liquor License With Conditions.*

F & T next contends that the Commission exceeded its authority in granting a license conditioned upon Trahan not

working in the licensed premises. F & T asserts that the proper procedure would have been to unconditionally grant the license and that if F & T thereafter employed a person who caused problems, then the Commission could issue a show cause order as to why the license should not be canceled, revoked, or suspended.

Administrative agencies have only that authority explicitly granted by statute. See, e.g., *Big John's Billiards v. Balka*, 254 Neb. 528, 577 N.W.2d 294 (1998). Statutory interpretation presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Cox Cable of Omaha v. Nebraska Dept. of Revenue*, 254 Neb. 598, 578 N.W.2d 423 (1998). Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has not taken any action to change such interpretation. *Id.* When a series or collection of statutes pertaining to a certain subject matter which is in pari materia are considered, the statutes may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. *Id.* Thus, we must determine whether the Nebraska Liquor Control Act (LCA), Neb. Rev. Stat. §§ 53-101 to 53-1,121 (Reissue 1993 & Cum. Supp. 1996), provides the Commission with authority to issue a license with conditions attached.

The Nebraska Supreme Court has previously held that the power of the state to absolutely prohibit the manufacture, sale, transportation, or possession of intoxicants includes the power to prescribe the conditions under which alcoholic beverages may be sold, and the state may exercise large discretion as to the means employed in performing this power. *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 229 Neb. 530, 427 N.W.2d 784 (1988) (discussing legislative classification of dual businesses in equal protection context). Furthermore, regulating the traffic in liquors involves not just prescribing who may sell liquor and under what conditions, but conversely, who may not, and under what circumstances the right to sell liquors may be forfeited. *Bali Hai', Inc. v. Nebraska Liquor Control*

*Commission*, 195 Neb. 1, 236 N.W.2d 614 (1975) (holding that city of Lincoln can revoke license for failure to open for business). The right to engage in the sale of intoxicating liquors involves a mere privilege; and restrictive regulations do not deprive persons of property without due process of law, violate the Privileges and Immunities Clause, the Due Process Clause, the uniformity provisions, nor, unless they contain irrational classifications or invidious discriminations, the equal protection of the law as provided by the state and federal Constitutions. *Tom & Jerry, Inc. v. Nebraska Liquor Control Commission*, 183 Neb. 410, 160 N.W.2d 232 (1968) (amendment to LCA which did not allow retailer to purchase beer on credit upheld). See, also, *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988).

We conclude that the LCA empowers the Commission to issue a license subject to certain restrictions or conditions so long as those restrictions and conditions are reasonably necessary to the protection of the health, safety, and welfare of the people of the State of Nebraska and to the promotion and fostering of temperance in the consumption of alcohol. See § 53-101.05.

The Commission obviously construes the LCA as vesting it with authority to fix certain requirements and prescribe certain conditions upon a licensee as is evident from the license issued here. That construction will be given considerable weight. See *Cox Cable of Omaha, supra*. This assigned error is without merit.

*Is There Sufficient Relevant Evidence to Support Decision?*

F & T's final contention is that the Commission's condition precluding Trahan from working in the licensed premises is discriminatory, arbitrary, and unreasonable, and not supported by the record. It first asserts that prohibiting Trahan from being an employee of a licensee because of his felon status is arbitrary and unreasonable. We can see nothing in the record to support the argument that the license was conditioned as it was because of Trahan's felon status. Thus, we discuss this argument no further.

F & T also argues that if the condition was based on Trahan's past chemical dependency or alcoholism, it violates the Nebraska Fair Employment Practice Act (FEPA), Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 1993). The argument is that alcoholism is a "disability" under the provisions of the FEPA, that the FEPA makes it unlawful to fail or refuse to hire or to discharge an individual because of a disability, and that thus F & T will be forced to violate the FEPA if it wants a liquor license. We note that the condition at issue does not prohibit Trahan's employment by F & T. It only prohibits Trahan's working "in the licensed premises." But, more importantly, as we hereafter discuss, F & T has not demonstrated that this restriction arose solely from Trahan's alcoholism, even if it is deemed a "disability" as contended by F & T.

The Commission asserts that F & T failed to satisfy the criteria for issuance of a liquor license pursuant to § 53-132 (Reissue 1984) and that the Commission was more than generous in granting the license subject to the conditions.

In order for a license to be issued under § 53-132, the licensee has the burden to prove that (1) it is fit, willing, and able to properly provide the service proposed; (2) that it can conform to all the provisions, requirements, rules, and regulations provided in the LCA; (3) it has demonstrated that the type of management and control exercised over the licensed premises will be sufficient to ensure that the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the LCA; and (4) the issuance of the license is or will be required by the present or future public convenience and necessity. See § 53-132 and *Kerrey's, Inc. v. Neb. Liquor Control Comm.*, 213 Neb. 442, 329 N.W.2d 364 (1983). Thus, it was the burden of F & T to demonstrate, inter alia, that it would exercise the type of management and control over the Corner Bar sufficiently to ensure that the business could conform to the provisions, requirements, rules, and regulations of the LCA.

The issue before us, as it was before the district court, is whether the decision of the Commission in placing this condition on the issuance of the license is supported by sufficient relevant evidence. See *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992).

 Evidence supports an administrative agency's decision reviewed in an error proceeding if the agency could reasonably find the facts for the agency's decision on the basis of relevant evidence contained in the record before the agency. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991).

The proceedings before the Commission reflect that the Commission's primary concern with the license issuance was over Trahan's connection with the operation of the bar. Although the record does not contain the specifics of the Commission's "audit" and cancellation of F & T's original license, it is apparent they were triggered by repeated disturbances at the Corner Bar. In Littrell's opinion, Trahan was the main reason for the numerous police calls and complaints received on the Corner Bar. Littrell testified that past problems at the bar "fell back" on Trahan working at and managing the bar and that neither the change in stock ownership nor the hiring of Rayl as manager had appreciably changed the day-to-day operation of the bar, as Trahan worked at the bar more than Rayl did. F & T's response to Littrell's evidence was to offer evidence that Trahan had completed alcohol and drug treatment.

We recall that the precise nature of the prior bar disturbances, the police calls, the complaints, and importantly, Trahan's contribution to them is not disclosed by the record. However, F & T's original license was clearly canceled because of problems related to Trahan, and F & T did not challenge that cancellation. It is F & T's position that since Trahan has addressed his dependency problems, it has met its burden to demonstrate that Trahan's employment on the premises would no longer adversely affect the management and control of the premises. See § 53-132(3). The Commission obviously disagreed. In order for us to say that the Commission's decision lacks evidential support, we would have to find that the original cancellation of the license was due solely to Trahan's personal alcoholism and drug dependency and that it was no longer likely to impact his working on the premises. But, the record fails to establish either. While the parties are probably quite familiar with the nature and scope of all the "problems" that led to the license cancellation, they have failed to include them in the record. Based on our review of the record, we cannot say that

the condition imposed is arbitrary or that the record lacks relevant evidence to support it.

It was F & T's burden to persuade the Commission that the "control" of the bar would be such as to "insure" the business' conformity with liquor laws. See § 53-132(2). The attempt to extricate Trahan from corporate control by his transfer of stock ownership to his sister was obviously not accepted by the Commission as a relinquishment of his control over the bar itself. The Commission apparently concluded that Trahan's continued work at the premises represented an unreasonable risk to the business' ability to avoid the problems that led to the initial cancellation. We believe the Commission could reasonably reach that conclusion, particularly in the absence of evidence that the past bar problems were exclusively related to Trahan's personal drug and alcohol use.

The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh the evidence or make independent findings of fact. *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992). Relevant evidence in the record before the Commission was sufficient for it to impose a license condition prohibiting Trahan's working at the licensed premises.

## CONCLUSION

The Commission had jurisdiction to initiate the April 3, 1997, hearing and to place reasonable conditions on the liquor license. Moreover, the decision to impose a condition that Trahan not work on the licensed premises is supported by sufficient relevant evidence in the record made before the Commission.

AFFIRMED.