COX CABLE OF OMAHA, INC., A FOREIGN CORPORATION, APPELLEE, v. NEBRASKA DEPARTMENT OF REVENUE AND M. BERRI BALKA, TAX COMMISSIONER OF THE STATE OF NEBRASKA, APPELLANTS.
578 N.W. 2d 423

Filed May 8, 1998.    No. S-97-083.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants.

Norman H. Wright, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.
On June 30, 1992, the Nebraska Department of Revenue (Department) issued a notice of deficiency determination to Cox Cable of Omaha, Inc. (Cox), for sales and consumer's use tax for the period from May 1, 1988, through May 31, 1991. Cox filed a timely petition for redetermination contesting portions of the deficiency determination. On December 13, 1994, M. Berri Balka, the Tax Commissioner of the State of Nebraska, issued an order sustaining the Department's deficiency determination and dismissing Cox's petition for redetermination. Cox appealed, and the district court for Lancaster County reversed the Tax Commissioner's order. The Department and the Tax Commissioner now appeal the district court's order to this court. We conclude that the Tax Commissioner correctly construed the applicable statutory provisions governing the assessment of the use tax and, therefore, reverse the judgment of the district court and remand the cause with directions to affirm the order of the Tax Commissioner.

## FACTS

Cox is licensed by the Federal Communications Commission and is authorized by the city of Omaha to operate a franchise providing community antenna television service (cable television) in the Omaha metropolitan area. Cox's cable television programming emanates from satellite dishes and antennas and is distributed through fiber optics and coaxial cable to a distribution plant. In order for a subscriber to receive cable service, Cox must install a "house drop" connecting the distribution plant to the subscriber's house. The installation of a house drop requires the use of personal property such as coaxial cable, fittings, rubber boots, and tape, as well as rods, wires, straps, and blocks used for grounding.

Cox employees install some of the house drops, but Cox also hires independent contractors to perform installations during peak volume periods. These contractors are not themselves licensed to provide cable television services; however, regardless of whether a Cox employee or an independent contractor installs the house drop, the work performed is identical. Cox provides the materials used in the installations and pays sales tax on them. Cox compensates the contractors on a piece-rate basis for each type of installation performed.

Cable subscribers are assessed a standard installation charge when their service is initiated; however, the installation charge bears little relationship to the actual cost Cox incurs in installing the service. This is due, in part, to the variance in the amount of work required to install the service. For instance, some homes already have a house drop because a prior or current owner subscribed to cable and then disconnected the service. In these cases, very little work is required to reinstall the service, and Cox pays less for the installation. However, if an entire house drop must be installed at a location, the contractor will receive more compensation. In addition, Cox sometimes reduces or waives new subscribers' installation charges as a marketing strategy, further reducing the correlation between the installation charge and the actual cost of installation.

In a letter dated June 30, 1992, the Department issued Cox a notice of deficiency determination for sales and consumer's use tax for the period from May 1, 1988, through May 31, 1991.

Cox filed a timely petition for redetermination protesting the deficiency determination. Specifically, Cox protested the portion of the deficiency determination holding that the charges Cox paid to independent contractors for the installation of tangible personal property in conjunction with furnishing cable television services were subject to consumer's use tax.

On December 13, 1994, the Tax Commissioner issued an order sustaining the Department's deficiency determination and dismissing Cox's petition for redetermination. Cox appealed the Tax Commissioner's decision to the district court for Lancaster County, which reversed the decision based upon its finding that cable television installation services are subject to the use tax only when performed by the entity which furnishes the actual cable service pursuant to a franchise or permit granted by a county, city, or village. The Department and the Tax Commissioner appealed from this order, and we moved the case to our docket on our motion, pursuant to our authority to regulate the dockets of the Nebraska Court of Appeals and this court.

## ASSIGNMENT OF ERROR

The Department and the Tax Commissioner assert that the district court erred in holding that charges paid by Cox to independent contractors for the connection and installation of cable television services provided by Cox were not subject to use tax.

## STANDARD OF REVIEW

Statutory interpretation presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *PLPSO v. Papillion/LaVista School Dist.*, 252 Neb. 308, 562 N.W.2d 335 (1997); *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

## ANALYSIS

To determine whether Cox is obligated to pay a consumer's use tax on amounts which it paid to third-party contractors, we must apply the following statute, which was in effect during the audit period:

(1) There is hereby imposed a tax of two percent upon . . . the gross receipts of every person engaged . . . as a

community antenna television service operator or any person involved in the connecting and installing of the services defined in subdivision (4)(b) . . . (iv) of section 77-2702 . . . .

. . . .

(2) A use tax is hereby imposed . . . on any transaction the gross receipts of which are subject to tax under subsection (1) of this section . . . for storage, use, or other consumption in this state at the rate set as provided in subsection (1) of this section on the sales price of the property

. . . .

Neb. Rev. Stat. § 77-2703 (Reissue 1990). Subsection (2)(a) of § 77-2703 states that if a taxpayer pays sales tax on a transaction, his or her liability for use tax is extinguished. Thus, § 77-2703(1) imposes a sales tax on the gross receipts of certain transactions, including the installation of cable television, while § 77-2703(2) imposes an equivalent use tax on the gross receipts of transactions that are not subject to sales tax. In the present case, the Department asserts that Cox is liable for use taxes under § 77-2703(2). However, because the use tax described in § 77-2703(2) is defined by reference to the sales tax described in § 77-2703(1), it is necessary to refer to § 77-2703(1) in construing the use tax provisions at issue in this case.

Neb. Rev. Stat. § 77-2702(4)(b) (Cum. Supp. 1988) is also relevant to the present case. The statute in effect during the relevant period provided in pertinent part:

(b) Gross receipts of every person engaged . . . as a community antenna television service operator or any person involved in the connecting and installing of services defined in subdivision (4)(b) . . . (iv) of this section shall mean:

. . . .

(iv) In the furnishing of community antenna television service, the gross income received from the furnishing of such community antenna television service as regulated under sections 18-2201 to 18-2205.

Gross receipts shall also mean gross income received from the provision, installation, construction, servicing, or

removal of tangible personal property used in conjunction with the furnishing, installing, or connecting of . . . community antenna television service specified in subdivision (4)(b)(iv) of this section.

§ 77-2702(4). An amendment to this statute in 1989 added the term "or 23-383 to 23-388" immediately following the reference to "sections 18-2201 to 18-2205." See § 77-2702(4)(b)(iv) (Reissue 1990). Neb. Rev. Stat. §§ 23-383 to 23-388 (Reissue 1997) govern the regulation of cable television service by counties, while Neb. Rev. Stat. §§ 18-2201 to 18-2205 (Reissue 1997) govern the regulation of such services by cities and villages. These statutes make it unlawful for any person not holding a permit or franchise to construct, install, operate, or maintain a cable television service. See §§ 18-2202 and 23-384.

Since 1986, when the Legislature amended § 77-2703 to tax cable television services and the installation of cable television, the Department has construed § 77-2703 to mean that charges for installing or connecting cable television services are taxable to the consumer of the services, including any party who contracts to have such services performed by another. Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has not taken any action to change such an interpretation. *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997). See, also, *Monahan v. School Dist. No. 1*, 229 Neb. 139, 425 N.W.2d 624 (1988).

While we afford a degree of deference to the Department's construction of the applicable statutes, we are also guided by our own well-established principles of statutory construction. Where words of a statute are plain and unambiguous, no interpretation is needed to ascertain their meaning. *Kellogg Company v. Herrington*, 216 Neb. 138, 343 N.W.2d 326 (1984). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered it its plain, ordinary, and popular sense. *In re Estate of Nuesch*, 252 Neb. 610, 567 N.W.2d 113 (1997); *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997); *Boss v.*

*Fillmore Cty. Sch. Dist. No. 19*, 251 Neb. 669, 559 N.W.2d 448 (1997). In addition, when considering a series or collection of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. *In re Interest of Powers*, 242 Neb. 19, 493 N.W.2d 166 (1992).

It is undisputed that the services performed by independent contractors in connecting and installing house drops are in all material respects identical to the services performed by Cox employees when they connect and install house drops and that the independent contractors are not themselves authorized to provide cable television services. We agree with the finding of the district court that "[t]he independent contractors . . . are clearly involved in connecting the wires used to carry the cable television transmission to the consumer's television set and receive income from such involvement." However, we disagree with the district court's determination that § 77-2703(1) "clearly applies only to persons that are involved in the installation of cable services as a franchised entity."

The tax imposed by § 77-2703(1) is on the gross receipts of cable television service operators "or any person involved in the connecting and installing" of regulated television services. Section 77-2703(1) clearly reflects an intent to tax not only the receipts of cable television service operators, but also the receipts of persons who are not franchised entities but perform services involving the connection and installation of regulated television services. Similarly, § 77-2702(4)(b)(iv) defines "gross receipts" to include not only gross income from furnishing regulated cable television service, but also gross income from the installation and construction of tangible personal property "used in conjunction with" the installation or connection of regulated cable television services. If the Legislature had intended to tax only the gross receipts attributable to connection and installation services performed by the holder of a franchise or permit, it could have so stated. The Legislature's use of broader language reflects that it intended the scope of the tax to extend beyond the receipts of the franchised entity to other persons or entities who derive revenue from performing services

which involve the "installing" or "connecting" of regulated television services. Therefore, we hold that the tax imposed by § 77-2703 extends to the independent contractors' gross receipts derived from services which they performed in installing house drops pursuant to their contractual agreements with Cox.

This statutory construction does not conflict with the regulatory statutes prohibiting the installation of cable television services by persons not holding a franchise or permit to provide cable television services. See §§ 18-2202 and 23-384. Whether it utilizes its own employees or independent contractors, Cox retains the overall responsibility for the installation of house drops. When Cox elects to use independent contractors, the independent contractors are required to perform the installation services in conformity with Cox's guidelines and standards in order to receive payment. When such contractors provide these services, they become "involved" in the connection and installation of regulated television services, and their gross receipts from such involvement become subject to the use tax which Cox, as the consumer of their services, becomes liable to pay.

We are not persuaded by Cox's argument that the amounts which it pays to contractors who connect and install house drops are not subject to use tax because Cox cannot directly pass such amounts on to consumers. As noted above, we construe the applicable statutes as imposing a tax on any transaction involving the use of personal property in the connection and installation of regulated cable television service, including both services provided by the franchised entity and services provided by one who contracts with the franchised entity to provide such services. Under this statutory scheme, the extent to which the franchised entity may be able to recover use taxes paid on contracted services by passing the taxes on to its subscribers is irrelevant to the issue of whether the use tax can be imposed.

Based upon our holding in *T-V Transmission v. County Bd. of Equal.*, 215 Neb. 363, 338 N.W.2d 752 (1983), Cox argues that cable television wires and house drops are fixtures rather than tangible personal property and that the Legislature "did not intend Neb. Rev. Stat. § 77-2702(b) to apply to the labor costs

involved in the installation of fixtures." Brief for appellee at 17. In *T-V Transmission*, we held that for purposes of property tax assessment, installed house drops for cable television transmission constituted fixtures to the realty and not tangible personal property upon which an entity providing cable television service could be taxed. This decision has no application to the issue before us in this case, which is whether the use tax applies to the amounts which Cox pays to independent contractors for utilizing cable, wires, clips, and other personal property to connect Cox's cable television distribution system to the homes of its subscribers.

In summary, we conclude that the amounts which Cox paid during the period from May 1, 1988, through May 31, 1991, to independent contractors for the installation and connection of house drops are subject to the consumer's use tax. Therefore, we reverse the judgment of the district court and remand the cause with directions to affirm the order of the Tax Commissioner.

REVERSED AND REMANDED WITH DIRECTIONS.