CAPITOL CITY TELEPHONE, INC., A NEBRASKA CORPORATION, APPELLANT, V. NEBRASKA DEPARTMENT OF REVENUE, AN AGENCY OF THE STATE, AND MARY JANE EGR, TAX COMMISSIONER, APPELLEES.
ALIANT COMMUNICATIONS CO., DOING BUSINESS AS ALLTEL, A DELAWARE CORPORATION, AND ALIANT SYSTEMS, INC., DOING BUSINESS AS ALLTEL, A NEBRASKA CORPORATION, APPELLEES AND CROSS-APPELLANTS, V. NEBRASKA DEPARTMENT OF REVENUE, AN AGENCY OF THE STATE OF NEBRASKA, AND MARY JANE EGR, TAX COMMISSIONER, APPELLANTS AND CROSS-APPELLEES.

650 N.W.2d 467

Filed August 9, 2002. Nos. S-00-879, S-01-558.

Michael L. Schleich, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellant Capitol City Telephone, Inc., in No. S-00-879.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees Nebraska Department of Revenue and Mary Jane Egr in No. S-00-879.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants Nebraska Department of Revenue and Mary Jane Egr in No. S-01-558.

Paul M Schudel and Shannon L. Doering, of Woods & Aitken, L.L.P., for appellees Aliant Communications Co. and Aliant Systems, Inc., in No. S-01-558.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
These consolidated cases involve appeals from the Nebraska Department of Revenue (the Department). Capitol City Telephone, Inc. (Capitol); Aliant Communications Co. (Aliant); and Aliant Systems, Inc. (Systems), were each audited and issued deficiency assessments by the Department.

### ALIANT AND SYSTEMS PROCEDURE
Aliant filed a petition for redetermination and paid the alleged deficiency. Systems paid the alleged deficiency and filed a claim of overpayment of sales and use tax. The cases of Aliant and Systems were consolidated. A hearing on that consolidated case was held before a hearing officer of the State Tax Commissioner (the Commissioner). The issues in the district court, according to Aliant's brief, were as follows: (1) whether gross receipts from charges by Aliant and Systems associated with installations, moves, additions, upgrades, or changes of inside wire, station connection, and terminal connections, performed within the premises of businesses or residences at locations commonly referred to as a "customer side" of the "demarcation point" (D mark), are subject to Nebraska sales tax pursuant to Neb. Rev. Stat. §§ 77-2703(1) and 77-2702.07(2) (Cum. Supp. 2000); (2) whether imposition of sales tax on charges by Aliant and Systems associated with installations, moves, additions, upgrades or

changes of inside wire, station connections, and terminal connections, when sales taxes assertedly not imposed on similar telephone equipment installed by others, constitutes an unreasonable classification in violation of the equal protection clause; and (3) whether the doctrine of equitable estoppel should be applied.

The hearing officer sustained the deficiency determination issued to Aliant and denied Systems' claim for overpayment of sales and use tax. Aliant and Systems then appealed to the district court for Lancaster County which set aside the orders of the Department and the Commissioner. The trial court found that Aliant and Systems are not subject to sales tax, interest, or penalties relating to the gross receipts from the installation and labor charges on the customer side of the D mark, but found that the elements of equitable estoppel had not been proved. The trial court did not address the second issue, the equal protection claim. From that, the Department appeals to this court.

### CAPITOL PROCEDURE

Capitol, after being issued a deficiency assessment by the Department, filed a petition for redetermination, and a hearing was held before a hearing officer of the Commissioner. The issue was whether the portion of the Department's assessment of sales tax on Capitol's gross receipts relating to trip and labor charges, installation charges, and programming charges for installing, connecting, and servicing new telephone systems and related equipment, and for moving, changing, and upgrading existing telephone equipment and features, was properly subject to sales tax in Nebraska. It should be noted that all of Capitol's charges were on the customer side of the D mark. The deficiency assessment was upheld. Capitol appealed to the district court for Lancaster County which affirmed the decision. The district court found that under § 77-2702.07(2), gross receipts shall also mean gross income received from the provision, installation, construction, servicing, or removal of property used in connection with the furnishing, installing, or connecting of telephone communication service. Because of the substantially similar questions involved in these cases, they have been consolidated for this court's review and determination.

## BACKGROUND

### LEGAL BACKGROUND

On March 1, 1983, the Nebraska Public Service Commission issued an order directing that telephone customers would be responsible for the installation, repair, and maintenance of new inside station wiring and for the repair and maintenance of existing station wiring. Telephone customers were also allowed to purchase their own terminal equipment from sources other than the service provider.

The telephone company was to continue to own its facilities up to the D mark. The D mark is the point at which the facilities that are owned and maintained by the telephone company are connected to the inside station wiring owned by and dedicated to an individual customer's use. Commencing June 1, 1983, ownership of inside wire, station connections, and terminal equipment within the premises of businesses and residences on the customer's side of the D mark was transferred to the customers.

Prior to 1986, separately stated charges for labor and services rendered in installing or connecting tangible personal property were excluded from the definition of gross receipts and, therefore, were not subject to taxation. In 1986, the Nebraska Legislature extended the sales and use tax to the gross receipts of any person involved in connecting and installing telephone, telegraph, gas, electricity, sewer, water, and community antenna service. 1986 Neb. Laws, L.B. 1027. The following year, the Legislature removed the sales and use tax on the gross receipts of any person involved in installing and connecting sewer, water, gas, and electrical service. 1987 Neb. Laws, L.B. 523. The sales and use tax on the gross receipts of telephone, telegraph, and community antenna television service was retained.

Section 77-2703(1), which amendments have not substantively changed the applicable law in effect during Capitol's, Aliant's, and Systems' audit periods beginning in 1993, provides in relevant part:

> There is hereby imposed a tax at the rate provided in section 77-2701.02 upon the gross receipts from all sales of tangible personal property sold at retail in this state, the gross receipts of every person engaged as a public utility,

as a community antenna television service operator or any person involved in the connecting and installing of the services defined in subdivision (2)(a), (b), or (d) of section 77-2702.07 . . . .

The current version of § 77-2702.07(2), which amendments also have not substantively changed the applicable law in effect during the audit periods beginning in 1993, defines "gross receipts" to include the following:

Gross receipts of every person engaged as a public utility specified in this subsection or as a community antenna television service operator or any person involved in connecting and installing services defined in subdivision (2)(a), (b), or (d) of this section shall mean:

(a) In the furnishing of telephone communication service, the gross income received from furnishing local exchange telephone service and intrastate message toll telephone service. Gross receipts shall not mean (i) the gross income, including division of revenue, settlements, or carrier access charges received on or after January 1, 1984, from the sale of a telephone communication service to a communication service provider for purposes of furnishing telephone communication service or (ii) the gross income attributable to services rendered using a prepaid telephone calling arrangement. For purposes of this subdivision, a prepaid telephone calling arrangement shall mean the right to exclusively purchase telecommunications services that are paid for in advance that enables the origination of calls using an access number or authorization code, whether manually or electronically dialed;

(b) In the furnishing of telegraph service, the gross income received from the furnishing of intrastate telegraph services;

. . . .

(d) . . . .

Gross receipts shall also mean gross income received from the provision, installation, construction, servicing, or removal of property used in conjunction with the furnishing, installing, or connecting of any public utility services specified in subdivision (2)(a) or (b) of this section or com-

munity antenna television service specified in subdivision (2)(d) of this section. Gross receipts shall not mean gross income received from telephone directory advertising.

On September 22, 1986, Roger W. Hirsch, then the deputy Tax Commissioner, wrote a "Dear Telephone Company" letter. The letter stated that telephone companies would be taxed only on installation charges relating to the assembly and placement of components necessary to effect delivery of service from the company's general delivery system up to, but not beyond, the point where the service entered a customer's premises. The Commission has changed its position since this letter was sent, but the record does not reveal any specific documentation regarding this change.

In 1993, the Department's regulation regarding telephone and telegraph communication services, 316 Neb. Admin. Code, ch. 1, § 065.05 (1994), was formally amended in contravention of the Hirsch letter, and was enacted on May 14, 1994. That regulation provides: "Charges made by a telephone company to the customer for installations, service connections, move and change charges, service upgrades, optional features like call waiting or voice mail, and construction costs constitute gross receipts for telephone service and are taxable."

Capitol, Aliant, and Systems maintain that the sales tax is not applicable to the services they provide. They claim that the above-cited laws are limited only to those installations and services performed in the context of delivering a utility service, which is not the context of their installations and services at issue. The particular procedural background of each case is presented below.

### CAPITOL

Capitol is a Nebraska corporation with its principal place of business in Nebraska. It purchases and services premanufactured telephone communications systems and equipment and resells the telephone systems to small- and medium-sized businesses. It also installs and maintains computer cabling networks and paging and intercom sound systems. Its systems and services consist of a group of products that are sold as complete communications systems with a variety of features and functions. The systems

vary in size and cost depending on the complexity of the features, functions, and telephones requested by the customer. The basic unit of the systems sold during the relevant time period was a key service unit (KSU) or a private branch exchange unit (PBX).

When Capitol sells a telephone system or equipment to a customer in Nebraska, the customer has several options. The customer can do his or her own installation, engage another party to perform the installation, or have Capitol install the telephone system. The installation process involves unpacking the various components of the system and mounting the KSU or PBX to a floor or wall. Parts of the PBX have to be connected. Wire or cable would then be run from the PBX to various locations throughout the building where the telephone jacks are located. Individual systems are then connected to the system by running a wire from the jacks to a plug in the telephone.

The telephones and the KSU or PBX are programmed to incorporate the features ordered by the customer. The system is physically linked with the local exchange telephone company's wire or cable via the D mark, thereby interconnecting the system with the local telephone facilities. This permits each telephone on the system the ability to access the local telephone exchange service. Capitol does not provide local exchange telephone service or intrastate message toll service in Nebraska. Capitol bills its customers for installing, connecting, and servicing telephone systems, and for moving, changing, and upgrading the related equipment and features at the customer's request.

The Department conducted an audit for sales and consumer's use tax of the books and records of Capitol for the period December 1, 1993, through October 31, 1997. As a result of said audit, the Department issued a notice of deficiency determination to Capitol on April 1, 1998. Capitol timely filed a petition for redetermination of its sales and use tax liability for the portion of the sales tax deficiency relating to trip and labor charges, installation charges, programming charges, and charges associated with moving, changing, and upgrading telephone systems and related equipment. On October 22, 1999, the Commissioner issued an order sustaining the deficiency determination and dismissing Capitol's petition for redetermination.

Capitol then appealed to the district court for Lancaster County. The district court held that Capitol's services are rendered in conjunction with the furnishing, installing, or connecting of local exchange and intrastate message toll service. Capitol has appealed to this court. The amount of tax being protested is $9,260, excluding interest and penalties.

## ALIANT AND SYSTEMS

Aliant is a Delaware corporation domesticated under the laws of Nebraska with its principal offices and place of business in Lincoln, Nebraska. During the relevant time period (February 1, 1995, through March 31, 1998), Aliant operated as a diversified communications company.

Aliant also purchased telephones and resold them to its residential and business customers. It provided and installed voice mail and custom calling features such as call waiting and caller identification remotely from its central office. If requested by a customer, Aliant also installed materials such as inside wiring.

Systems is a Nebraska corporation with its principal offices and place of business also in Lincoln. During the relevant time period (July 1, 1995, through June 30, 1998), Systems provided intrastate message toll service through its division known as Lincoln Telephone Long Distance and later as Aliant Long Distance, provided sales and leases of telephone systems and other equipment, provided installation and training for the operation of telephone systems and other equipment, provided service agreements related to telephone systems and other equipment, and provided telephone answering service.

Systems also purchased premanufactured telephone systems and resold them to customers. Among the systems it sold were KSU, PBX, voice mail, call monitoring, facsimile machines, and intercoms.

The Department conducted an audit of Aliant for compliance with the sales and use tax laws of Nebraska for the period of February 1, 1995, through March 31, 1998. The Department issued a notice of deficiency determination to Aliant on or about February 16, 1999. On March 11, Aliant timely filed a petition for redetermination of such sales and use tax liability with the Department. Aliant requested a redetermination of the audit

findings, including, but not limited to, the application of sales tax to gross receipts that Aliant derived from installations, moves, equipment changes, and additions.

The Department also conducted an audit of Systems for compliance with the sales and use tax laws of Nebraska for the period July 1, 1995, through June 30, 1998. The Department issued a notice of deficiency determination on or about November 30, 1999. Systems made payment of amounts set forth in the notice. On or about January 26, 2000, Systems filed with the Department a claim for overpayment of sales and use tax, requesting a refund of amounts taxed, interest, and penalties paid as a result of the audit of Systems, and the subsequent deficiency assessment. The request for refund included sales tax on gross receipts that Systems derived from labor involved in the installation of telephone systems, equipment, and wiring.

The Department assessed sales tax on installation labor services provided by Aliant and Systems that were performed with regard to customer-owned facilities on the customer side of the D mark. As a result of a regulatory directive, these facilities were not a part of the public utility operations of either Aliant or Systems during the audit period. After consolidation of Aliant's petition for redetermination and Systems' claim for overpayment, on May 16 and 17, 2000, the Department conducted a hearing. On July 20, the Commissioner issued her order sustaining the deficiency determination against Aliant and denying Systems' claim for overpayment of sales and use tax.

Aliant and Systems then appealed to the district court for Lancaster County. The district court held that the weight of the evidence supports Aliant and Systems' argument that gross receipts from the labor services at issue do not relate to public utility functions, nor do such receipts relate to the connecting or installing of services. Thus, the trial court set aside the order of the Department and the Commissioner and stated that Aliant and Systems were not subject to sales tax, interest, or penalties relating to the gross receipts from the installation charges on the customer side of the D mark.

The Department has now appealed to this court. Again, the disputed items relate only to the various installation services performed by Aliant and Systems on the customer side of the

D mark, and the sales tax on those charges are $136,095 and $98,307, respectively.

## ASSIGNMENTS OF ERROR

Capitol argues, rephrased, that its gross receipts from connecting and installing telephone communications systems are not subject to Nebraska sales tax pursuant to §§ 77-2703(1) and 77-2702.07(2) and that the trial court erred in finding that they were.

The Department argues just the opposite both in response to Capitol's assignment of error and in its own assignment of error against Aliant and Systems. The Department argues, rephrased, that the gross receipts of Aliant and Systems derived from charges for the provision, installation, or construction of property used in conjunction with the furnishing, installing, or connecting of telephone communication services are subject to Nebraska sales tax, pursuant to §§ 77-2703(1) and 77-2702.07(2), and that the trial court erred in finding they were not.

On cross-appeal, Aliant and Systems argue (1) that the trial court erred in failing to conclude that the Department's imposition of sales tax upon Aliant and Systems, while refusing to impose sales tax upon other providers of the same services, constitutes an unconstitutional denial of equal protection and (2) that the trial court erred in finding that Aliant and Systems failed to meet their burden to prove that the Department and the Commissioner are equitably estopped from assessing sales tax on the gross receipts at issue in this case.

## STANDARD OF REVIEW

■ A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Young v. Neth*, 263 Neb. 20, 637 N.W.2d 884 (2002); *Gottsch Feeding Corp. v. State*, 261 Neb. 19, 621 N.W.2d 109 (2001).

■ When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious,

nor unreasonable. *Young v. Neth, supra*; *Gottsch Feeding Corp. v. State, supra.*

■ An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Gottsch Feeding Corp. v. State, supra.*

■ To the extent the interpretation of statutes and regulations is involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997).

■ An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001).

## ANALYSIS

### Whether Gross Receipts at Issue are Taxable

Capitol, Aliant, and Systems argue that the gross receipts from the labor services at issue do not relate to a public utility function, nor were they received from the provision, installation, construction, servicing, or removal of property used in conjunction with the furnishing, installing, or connecting of a public utility service pursuant to §§ 77-2703(1) and 77-2702.07(2).

■ Capitol specifically points to the 1986 "Dear Telephone Company" letter written by Hirsch to support its position that those charges are not taxable under §§ 77-2703(1) and 77-2702.07(2). The Department's regulation § 065.05 provides: "Charges made by a telephone company to the customer for installations, service connections, move and change charges, service upgrades, optional features like call waiting or voice mail, and construction costs constitute gross receipts for telephone service and are taxable." Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000).

The Aliant and Systems trial court concluded that neither § 77-2703(1) nor § 77-2702.07(2) provides a basis for assessing sales tax on the gross receipts from the labor services provided by Aliant or Systems. The trial court, in the Aliant and Systems' case, also held that the Department could not through adoption of § 065.05 enlarge its power to assess sales tax.

The Department interprets §§ 77-2703(1) and 77-2702.07(2) as allowing for the gross receipts from the relevant labor services of Capitol, Aliant, and Systems to be subject to taxation. Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction. This is particularly so when the Legislature has failed to take any action to change such an interpretation. *Cox Cable of Omaha v. Nebraska Dept. of Revenue*, 254 Neb. 598, 578 N.W.2d 423 (1998).

Section 065.05 became effective May 14, 1994. Since Aliant's and Systems' tax deficiencies were from 1995 to 1998, the Hirsch letter had no effect as to Aliant or Systems. As to Capitol, however, its audit period was December 1, 1993, to October 31, 1997. Since § 065.05 became effective on May 14, 1994, the Hirsch letter was in existence with regard to Capitol from December 1, 1993, through May 14, 1994. The Hirsch letter, however, was not controlling and is not a rule or regulation. See *Perryman v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 66, 568 N.W.2d 241 (1997) (Department of Correctional Services' memorandum did not constitute rule or regulation), *disapproved on other grounds, Johnson v. Clarke*, 258 Neb 316, 603 N.W.2d 373 (1999).

In *Perryman*, we were required to determine whether a memorandum by the director of the Department of Correctional Services was a rule or regulation. This memorandum was written in response to a letter containing a legal opinion from the Attorney General. The memorandum advised that, effective immediately, the application of good time toward mandatory minimum sentences imposed for certain drug offenses was to be discontinued. We held in *Perryman* that the memorandum did not constitute a rule or regulation. See, also, Neb. Rev. Stat. § 84-901(2) (Reissue 1999). We conclude that the Hirsch letter is akin to the Department of Correctional Services' director's memorandum in *Perryman*. The Hirsch letter is not a rule or regulation.

Even if the Hirsch letter was a rule or regulation, an administrative agency cannot use its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering. *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997); *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994).

■ Additionally, statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Philpot v. Aguglia*, 259 Neb. 573, 611 N.W.2d 93 (2000); *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

■ In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Burlington Northern & Santa Fe Ry. Co. v. Chaulk*, 262 Neb. 235, 631 N.W.2d 131 (2001).

We previously addressed a similar issue of statutory interpretation in *Cox Cable of Omaha v. Nebraska Dept. of Revenue*, 254 Neb. 598, 578 N.W.2d 423 (1998). In that case, Cox hired independent contractors to perform the installation of "house drops." These drops connect the distribution plant to a subscriber's residence, thereby enabling the subscriber to receive cable television. A use tax was assessed to Cox for the charges paid to the independent contractors for the installation of house drops. Cox maintained that the tax applied only to the franchise company when it performed the installation services because the independent contractors were not licensed cable providers.

This court, however, rejected that argument, stating:

> The tax imposed by § 77-2703(1) is on the gross receipts of cable television service operators "or any person involved in the connecting and installing" of regulated

television services. Section 77-2703(1) clearly reflects an intent to tax not only the receipts of cable television service operators, but also the receipts of persons who are not franchised entities but perform services involving the connection and installation of regulated television services. Similarly, § 77-2702(4)(b)(iv) defines "gross receipts" to include not only gross income from furnishing regulated cable television service, but also gross income from the installation and construction of tangible personal property "used in conjunction with" the installation or connection of regulated cable television services.

254 Neb. at 604, 578 N.W.2d at 427.

We held in *Cox Cable of Omaha* that if the Legislature had intended to tax only the gross receipts attributable to connection and installation services performed by the holder of a franchise or permit, it could have so stated. However, the Legislature's use of broader language reflects that it intended the scope of the tax to extend beyond the receipts of the franchised entity to other persons or entities who derive revenue from performing services which involve the "installing" or "connecting" of regulated television services. Therefore, we held that the tax imposed by § 77-2703(1) extended to independent contractors' gross receipts derived from services which they performed in installing house drops pursuant to their contractual agreements with Cox. *Cox Cable of Omaha v. Nebraska Dept. of Revenue, supra.*

We conclude that §§ 77-2703(1) and 77-2702.07(2) allow for the charges at issue to be taxable. The definition of "gross receipts" in § 77-2702.07(2) encompasses every person engaged in furnishing telephone communication services or any person involved in connecting and installing telephone communication services. Subsection (2)(a) provides that gross receipts include the gross income from furnishing local exchange service and intrastate message toll telephone service. Additionally, the definition of "gross receipts" is broadened by subsection (2)(d) to include in the gross income revenue received from the provision, installation, construction, servicing, or removal of property used in conjunction with the furnishing, installing, or connecting of any public utility service, including telephone communication service.

The language of § 77-2703(1) ties in closely to the definition of "gross receipts" in § 77-2702.07(2). Section 77-2702.07(2) imposes a sales tax on the gross receipts of every person engaged as a public utility or any person involved in the connecting and installing of public utility service, including telephone communication service.

If the Legislature had intended only labor on the regulated side of the D mark to be taxable, it could have so stated in the statute. It did not, however, and instead stated that not only would the gross receipts of the public utility be taxed, but so would the gross receipts of "any person involved in the connecting and installing of the services defined in subdivision (2)(a), (b), or (d) of section 77-2702.07." § 77-2703(1).

We agree with the trial court in Capitol's case and find that the gross receipts of Capitol, Aliant, and Systems at issue are taxable. Regardless of who owns the inside wiring or terminal equipment, it is used in conjunction with the equipment of the telephone service carrier to provide the level of telecommunication service required by the customer. Capitol, Aliant, and Systems are engaged in installing and connecting telephones, wires, cables, consoles, and other property that form the telephone communication systems. Their telephone systems are connected or united with the local exchange network to carry telephone service into their customers' premises, and it is highly unlikely that their customers would pay for the systems if they would not have access to local telephone service. The services are, therefore, plainly rendered in conjunction with the furnishing, installing, or connecting of any local exchange service or intrastate message toll telephone service, even when performed on the customer side of the D mark.

We conclude that § 065.05 does not alter or enlarge the provisions of §§ 77-2703(1) and 77-2702.07(2) and, therefore, that the gross receipts of Capitol, Aliant, and Systems at issue are subject to Nebraska sales tax pursuant to §§ 77-2703(1) and 77-2702.07(2). We thus affirm the decision of the Capitol trial court and reverse the decision of the Aliant and Systems trial court on this issue.

## EQUAL PROTECTION

Equal protection is not raised as an issue in Capitol's case. In Aliant and Systems' cross-appeal, they argue that the Department's

selective imposition of sales tax upon them constitutes an unconstitutional denial of equal protection. They claim discriminatory treatment subjecting them to taxes not imposed upon others in the same class performing exactly the same services.

 The trial court, because it determined that the installations performed by Aliant and Systems were not subject to the sales tax under the relevant statutes, did not address the equal protection claim that Aliant and Systems presented. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001). An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001). This court has held that a constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. See *In re Adoption of Luke*, 263 Neb. 365, 640 N.W.2d 374 (2002).

Therefore, we remand the equal protection issue raised by Aliant and Systems to the trial court for its consideration.

EQUITABLE ESTOPPEL

Aliant and Systems also argue on cross-appeal that the Department is equitably estopped from retracting, without appropriate notice, the position delineated in the Hirsch letter. They claim that in reliance upon the letter, Aliant's billing system was changed, and it is exactly what the Department intended to happen. Despite the Department's contentions that the letter was intended to be an interim statement, nowhere in the letter is that so stated, and the Department has never explicitly revoked or rescinded the letter.

 This court has set forth six elements that must be satisfied for the doctrine of equitable estoppel to apply: (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of

knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel. See *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

The facts are that the Hirsch letter was dated September 22, 1986, and § 065.05 was issued in 1993, effective May 14, 1994. The regulation therefore superseded the Hirsch letter and was in full force and effect during the relevant time periods. Aliant and Systems are not being assessed taxes for periods before the issuance of § 065.05.

We agree with the trial court that the issuance of § 065.05 put Aliant and Systems on notice that they should no longer rely on the Hirsch letter. Agency regulations must be subject to a public hearing prior to their adoption, and § 065.05 has been a matter of public record since 1993. Additionally, Systems had notice from their customers that the Department changed its position with regard to installation charges. Had Aliant and Systems consulted the Department, they would have been further advised of the Department's position. Thus, under the facts of the case, it cannot be said that Aliant and Systems lacked the means to ascertain the correct interpretation and application of the law on the subject.

We therefore hold that the doctrine of equitable estoppel cannot be applied under the facts of this case.

## CONCLUSION

We conclude that under §§ 77-2703(1) and 77-2702.07(2), the installation and labor charges at issue are subject to sales tax. The language of the statutes is broadly worded, and deference is to be given to the Department's interpretation. Additionally, the language in its common, ordinary sense provides for the taxing of these activities.

We remand to the trial court Aliant and Systems' equal protection claim as set forth in its cross-appeal, as the trial court did not pass on the issue.

Finally, we conclude that the trial court in the Aliant and Systems case was correct in holding that equitable estoppel is not applicable under the facts of this case.

We affirm the ruling of the trial court in the case of Capitol.

We reverse the decision of the trial court in the case of Aliant and Systems as to its holding that the installation and labor charges at issue were not taxable under §§ 77-2703(1) and 77-2702.07(2); affirm that court's holding as to Aliant and Systems' equitable estoppel claim; and remand Aliant and Systems' equal protection claim to the trial court for its consideration.

JUDGMENT IN No. S-00-879 AFFIRMED.

JUDGMENT IN No. S-01-558 AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.