CHAD MASON, DOING BUSINESS AS CHAD MASON PRODUCTIONS, APPELLEE AND CROSS-APPELLANT, V. CITY OF LINCOLN, NEBRASKA, ET AL., APPELLEES AND CROSS-APPELLEES, AND STATE OF NEBRASKA ATHLETIC COMMISSIONER WALLY JERNIGAN, APPELLANT AND CROSS-APPELLEE.

665 N.W.2d 600

Filed July 18, 2003.   No. S-02-750.

Don Stenberg, Attorney General, and L. Jay Bartel for appellant.

Mark T. Bestul and Vincent M. Powers, of Vincent M. Powers & Associates, for appellee Chad Mason.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Chad Mason, doing business as Chad Mason Productions, filed a declaratory judgment action in the Lancaster County District Court, seeking a determination that "fight contests," which are events consisting of mixed martial arts, kickboxing, and submission wrestling, fall under the jurisdiction of the State Athletic Commissioner and do not violate any statute or ordinance. The district court found that fight contests are under the jurisdiction of the commissioner and that it is necessary for a promoter to obtain a license from the commissioner prior to conducting such events. The commissioner appeals.

## SCOPE OF REVIEW

■ In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

## FACTS

In April 2001, Mason began promoting weekly fight contests at the Royal Grove nightclub in Lincoln. Prior to the contest scheduled for July 19, Mason was informed by Lincoln Police Chief Thomas Casady that participating in and promoting such contests constituted the commission of a crime and that Mason needed to obtain a license from the commissioner. Mason canceled the contests scheduled for July 19, 21, and 26.

The parties stipulated to the following definitions: Mixed martial arts is "[u]narmed combat involving the use of any combination of combative techniques from different disciplines of the martial arts, including punching, striking, kicking, choking, kneeing, joint locks, 'throws', and take-down maneuvers." Kickboxing is "[a] combative form of martial art combining punches and martial arts kicks." Submission wrestling is "[a] combative form of fighting involving grappling techniques and submission holds associated with martial art forms, including the use of 'choke holds', 'armbar', 'shoulder lock', 'wrist lock', or 'ankle lock' techniques."

Participants in the fight contests included audience members who agreed to fight an experienced contestant. No specific weight categories were recognized or established, and no limits were imposed concerning the frequency of one's participation in the contests. Participants were not required to demonstrate any fight experience or training or any minimum physical capabilities. Participants were not required to undergo a physical examination by a licensed physician either prior or subsequent to engaging in the contests, nor were they subject to visual acuity testing prior to the contests. Participants were allowed to fight barefoot and were not required to wear "foul-proof groin protectors," mouthpieces, or protective headgear, but such equipment was highly recommended. Participants were not subject to alcohol or drug testing.

Mason did not require the presence of a licensed physician or trained emergency medical personnel, nor did he provide insurance for the participants' benefit. Referees were not required to receive any specific training or to meet any established standards, nor were they licensed or certified by any recognized organization. Judges did not score the fight contests. The contests were

not sanctioned or regulated by any government agency or generally recognized interscholastic, amateur, or professional body or organization that had established and enforced standards, rules, and requirements providing a reasonable degree of protection for the health and safety of participants and attempting to minimize the risk of serious injury.

Participants signed a release form providing that Mason and the nightclub were released from liability for any bodily injury or personal injuries arising from participation in the fight contests. The form also released medical professionals and the promoter's employees from any claim based on first aid or treatment provided during participation in the contests. The form stated that the participant "has been informed and is well aware of the nature of the event and acknowledges that [the participant] risks serious injury or death by participating in" a contest.

The parties stipulated that if called to testify, Casady would state that he determined that the fight contests involved elements of wrestling and boxing and fell under the regulation of the commissioner. Casady directed a police officer to contact the owner of the Royal Grove to inform him that operation of the contests was illegal without a license and that if the owner continued to host them, he would receive a criminal citation.

Mason subsequently contacted Casady and was also informed as to Casady's belief concerning the need for a license. Mason told Casady that the commissioner would not issue a license because the commissioner had concluded that the fight contests did not fall under his jurisdiction. Mason alleged that Casady informed him that even if he obtained a license from the commissioner, he would be subject to arrest for violating Neb. Rev. Stat. § 28-310(2) (Reissue 1995), which is third degree assault while engaging in a fight entered into by mutual consent.

When Mason contacted the commissioner about licensing a fight contest, the commissioner told Mason that such contests do not fall under the categories of boxing or wrestling and that, as such, the contests are not sanctioned. The commissioner determined he could not issue Mason a promoter's license because the contests, which allow the use of combative techniques, are not permissible within the statutes and regulations governing boxing and wrestling.

The parties stipulated that if called to testify, Kevin Neumann, a copromoter of the fight contests at the Royal Grove, would state that he has been involved in boxing, interscholastic wrestling, and mixed martial arts. He would testify that the safety of the participants is the main concern and that some states have adopted rules governing the conduct of such events. Concerning videotapes of fight contests received into evidence, Neumann would note that a contestant seen in one of the videotapes kneeing another contestant in the head has not been allowed to participate in subsequent contests. The referee in that match has not been allowed to officiate at any other contests promoted by Mason. Neumann stated that contests can be stopped at any time when a fighter submits, when a corner person throws in the towel, or when the referee stops the fight because a fighter can no longer defend himself or herself.

In his petition for declaratory judgment, Mason claimed that he had promoted such sporting activities in Omaha and had been informed that the promotions were not against any law or ordinance and could continue. He claimed that he had lost income from cancellation of the events and that the audience base was in danger of dissipating if the events were canceled.

In response to Mason's petition, the commissioner alleged that he lacks jurisdiction to license or regulate fight contests because they do not involve professional wrestling or boxing, which may lawfully be licensed and regulated pursuant to Neb. Rev. Stat. §§ 81-8,128 to 81-8,142.01 (Reissue 1996 & Cum. Supp. 2002). He further alleged that by promoting and conducting such contests, Mason is subject to prosecution for aiding, abetting, procuring, or causing consensual third degree assault pursuant to § 28-310(2). He also asserted that the fight contests constitute a public nuisance which should be enjoined.

The district court found that the fight contests are within the jurisdiction of the commissioner and that in order to promote and conduct future contests, Mason must obtain a license from the commissioner. The court stated:

> Notwithstanding the parties' arguments, it is evident that the fight contests are akin to "boxing," as that term is commonly understood. Like "boxing," which is defined as "the art of attack and defense with the fists practiced as a sport,"

the fight contests consist, in part, of attacking and defending with the fists. . . . Similarly, the fight contests are akin to "wrestling," as that term is commonly understood. Like "wrestling," which is defined as "to contend by grappling with and striving to trip or throw an opponent down or off balance," the fight contests consist, in part, of various "grappling techniques," such as holds, throws, and takedowns. . . . Finally, the fight contests also might fit in the broad category of "exhibition," which is commonly understood to mean "a public showing (as of works of art, objects of manufacture, or athletic skill)." . . . The fight contests are a public showing of punching, kicking and grappling techniques which, to be generous, together could be argued to approximate something like "athletic skill."

(Citations to Internet Web sites omitted.)

The district court declined to reach additional issues raised by the parties, including whether the fight contests involve third degree assault, which is subject to criminal prosecution pursuant to § 28-310(2); whether the fight contests constitute a public nuisance that should be enjoined; and whether prosecuting or threatening to prosecute Mason for aiding and abetting assault due to his involvement in the contests, when promoters and participants in other sports involving physical contact are not subjected to or threatened with criminal prosecution, either constitutes unconstitutional selective enforcement of the assault statutes or renders the application of § 28-310(2) to such activities unconstitutionally overbroad or void for vagueness. The court found these issues to be moot, although it noted that the issues could arise again if Mason promoted and conducted fight contests without a license.

## ASSIGNMENTS OF ERROR

The commissioner assigns as error the district court's finding that fight contests (including mixed martial arts, kickboxing, and submission wrestling) promoted and conducted by Mason fall under the jurisdiction of the commissioner and that the commissioner must license and regulate such fight contests pursuant to §§ 81-8,128 to 81-8,142.01.

On cross-appeal, Mason assigns as error the district court's failure to determine that the fight contests do not constitute

assault and its failure to determine that prosecution for assault in connection with the fight contests is unconstitutional.

## ANALYSIS

The issue is whether fight contests consisting of mixed martial arts, kickboxing, and submission wrestling fit within the definitions of professional wrestling and boxing, amateur boxing, sparring matches, or exhibitions, which are subject to regulation by the commissioner.

■ An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). This case involves statutory interpretation, which presents a question of law. See *Maxwell v. Montey*, 265 Neb. 335, 656 N.W.2d 617 (2003). In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court. *Spanish Oaks v. Hy-Vee, supra.*

The statutes considered here, §§ 81-8,128 to 81-8,142.01, are those which establish the office of the commissioner and define the commissioner's responsibilities. The parties disagree as to the interpretation of these statutes. The commissioner asserts that the district court was wrong in finding that fight contests fall under his jurisdiction and that he must license and regulate the contests. He argues that the contests promoted by Mason do not meet the definitions of professional wrestling and boxing, amateur boxing, sparring matches, or exhibitions. Mason asserts that the court was correct in construing the statutes to govern fight contests.

The primary statute to be considered is § 81-8,129, which provides:

> The State Athletic Commissioner shall have sole direction, management, control, and jurisdiction over all professional wrestling and boxing, amateur boxing, and sparring matches, and exhibitions to be held within the state, except such as are conducted by universities, colleges, high schools, the military, and recognized amateur associations for contestants under sixteen years of age. No professional boxers or wrestlers, or amateur boxers who have

attained the age of sixteen, shall participate in a match or exhibition for a prize or purse, or at which an admission fee is charged, either directly or indirectly, in the form of dues or otherwise, in this state except by a club, association, organization, or person licensed by the commissioner, as provided in section 81-8,130, and in pursuance of a license granted by the commissioner for such match or exhibition.

The commissioner asserts that the Legislature's determination to permit and regulate professional wrestling and boxing was not intended to allow the commissioner to sanction the fight contests promoted by Mason, which involve mixed martial arts and include punching, striking, kicking, choking, kneeing, joint locks, throws, and takedown maneuvers. The commissioner also argues that the reference to sparring matches and exhibitions in § 81-8,129 is not intended to include the fight contests.

We first note the definitions of the following terms: Wrestling is defined as "a sport in which two opponents struggle hand to hand in order to pin or press each other's shoulders to the mat or ground, with the styles, rules, and regulations differing widely in amateur and professional matches." Webster's Encyclopedic Unabridged Dictionary of the English Language 1647 (1989). Boxing is defined as "the art of attack and defense with the fists practiced as a sport." Webster's Third New International Dictionary, Unabridged 263 (1993). Sparring is defined as "to make offensive and defensive gestures without landing a blow in order to draw one's opponent and find or create an opening" or "to engage in a practice or exhibition bout esp[ecially] boxing with a sparring partner." *Id.* at 2182. Webster's defines an exhibition as "a public show or showing," as in "a public display of athletic or other skill often in the form of a contest or game but usu[ally] without importance with respect to winning or losing." *Id.* at 796. The commissioner suggests that sparring matches and exhibitions, as those terms are used in § 81-8,129, must be construed to refer specifically to professional wrestling and boxing, and amateur boxing.

The district court determined that the terms used in § 81-8,129 are ambiguous, which required the court to construe them. We disagree. In the absence of anything to the contrary,

statutory language is to be given its plain and ordinary meaning. *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003).

Although state law does not define professional wrestling and boxing, we determine that the fight contests promoted by Mason do not qualify as professional wrestling or boxing matches or exhibitions as those terms are commonly understood. The commissioner has jurisdiction over professional wrestling and boxing, and he has no authority to issue a license for events such as those promoted by Mason. The commissioner is not authorized to license activities that combine both professional wrestling and boxing, which are separate and distinct activities.

The statutes in question are intended to ensure the safety of participants in sporting events which had previously been unregulated and which involve professional wrestling and boxing techniques. However, the statutes are not intended to sanction the type of fighting promoted and conducted in these fight contests. While we acknowledge that boxing has an inherent risk of serious injury or even death, the combination of actions involved in a fight contest, as stipulated to in the record, clearly exacerbate the risks to the contestants.

Offered into evidence were two videotapes of representative fight contests. The videotapes show contestants in a ring of the type commonly used for boxing or professional wrestling matches. The contestants are not wearing protective headgear. Some of the contestants are wearing gloves. The contestants exhibit a combination of moves, some similar to those commonly used in professional wrestling and boxing. In addition, participants trade kicks. In one match, a contestant is seen kneeing the other in the head.

Section 81-8,129 provides that the commissioner has jurisdiction over "all professional wrestling and boxing, amateur boxing, and sparring matches, and exhibitions," except those conducted by educational institutions, the military, and amateur associations for contestants under the age of 16. The statute is clear concerning the type of activity which is intended to be governed by it. No interpretation is needed because the statute's language is not ambiguous. Thus, the district court resorted to interpreting state law when that was not necessary.

The only type of wrestling included in § 81-8,129 is professional wrestling, a form of entertainment in which "wrestlers battle each other in matches that are scripted and rehearsed beforehand." See Microsoft Encarta Online Encyclopedia 2003, *Professional Wrestling*, http://encarta.msn.com (accessed July 10, 2003). Professional wrestling and amateur wrestling are "not closely related," and "[p]rofessional wrestlers are skilled athletes," who "perform as entertainers and not as competitors." *Id.* Professional wrestlers attend training to "learn . . . how to decrease the danger of becoming injured while falling or being hit by another wrestler." *Id.*

The sport of boxing involves two opponents of approximately equal weight who exchange punches with their fists. The hands are padded by the use of what are commonly known as boxing gloves. Specific rules govern the course of conduct by the opponents, and the rules are enforced by a referee. Each contest is made up of a limited number of rounds, and each round is limited in time. Hitting below the belt is prohibited, as are kicking, head-butting, wrestling, choking, biting, kidney punches, and certain other physical contact. The object is to defeat one's opponent by a knockout, a technical knockout, or outscoring the opponent. The scoring is usually done by three judges who assess the skill of each opponent and score the rounds accordingly.

While some of the activities prohibited in boxing are permitted in professional wrestling, the participants are trained to entertain and to avoid injury. It is the combination of these activities and their use by untrained and unregulated amateurs that sets the fight contests at issue apart from professional wrestling and boxing, and amateur boxing.

We conclude as a matter of law that the commissioner does not have jurisdiction under § 81-8,129 to license fight contests such as those promoted by Mason. Mixed martial arts, kickboxing, and submission wrestling are not activities described in § 81-8,129. Thus, the district court erred in finding that these activities fall under the purview of the commissioner, and the court's determination is reversed.

## CROSS-APPEAL

In his cross-appeal, Mason asserts that the district court erred in failing to determine that the fight contests do not constitute

assault and in failing to determine that prosecution for assault in connection with the fight contests is unconstitutional.

The district court's pretrial order set forth several controverted and unresolved issues in addition to the question of whether the commissioner has jurisdiction to license fight contests. These issues included: (1) whether the fight contests involve third degree assault subject to criminal prosecution pursuant to § 28-310(2), (2) whether the fight contests constitute a public nuisance which should be enjoined, and (3) whether prosecuting or threatening to prosecute Mason for promoting the fight contests constitutes unconstitutional selective enforcement of the assault statute or renders § 28-310(2) unconstitutionally overbroad or void for vagueness.

After the district court determined that the commissioner has jurisdiction to license fight contests, the court declined to address the remaining issues, finding them to be moot. The court noted that only the jurisdictional question was before it and that the remaining issues could arise at a later time if Mason promoted and conducted fight contests without a license.

In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Capitol City Telephone v. Nebraska Dept. of Rev.*, 264 Neb. 515, 650 N.W.2d 467 (2002). An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Id.* A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Id.* This court declines to consider the issues raised in Mason's cross-appeal, and we remand the cause to the district court for consideration of those issues.

## CONCLUSION

The district court erred in finding that the fight contests promoted by Mason come under the jurisdiction of the commissioner, and its judgment is reversed. The issues raised on cross-appeal were not considered by the district court, and this court declines to review them. Thus, we remand the cause with directions that the district court determine those issues.

REVERSED AND REMANDED WITH DIRECTIONS.